**AUERBACH SHOE COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

No. 4837.

United States Court of Appeals
First Circuit.

Nov. 12, 1954

694

Harry Bergson, Boston, Mass., for petitioner.

Dudley J. Godfrey, Jr., Sp. Asst. to Atty. Gen., with whom H. Brian Holland,

Asst. Atty. Gen., and Ellis N. Slack and Lee A. Jackson, Sp. Asst. to Atty. Gen., were on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is a petition for review of a decision of the Tax Court of the United States affirming an assessment by the Commissioner of Internal Revenue of 50% fraud penalties computed on deficiencies in the petitioner-taxpayer's excess profits taxes for its fiscal years ending October 31, 1944, and October 31, 1945, and on a deficiency in its disclosed value excess profits tax for the later year. The stipulated facts as found by the Tax Court can be briefly stated.

The taxpayer is a Massachusetts corporation which at the times involved was engaged in the business of manufacturing shoes. It kept its books and filed with the local Collector of Internal Revenue its federal tax returns on the accrual basis covering fiscal years ending on October 31.

During the fiscal years 1944 and 1945 one Hyman Auerbach owned all the issued and outstanding stock of the corporation, and as its president, treasurer, and principal managing officer he devoted his full time to its affairs for which he drew a sizable salary.[1] In the course of those years he made sales of substantial quantities of goods belonging to the corporation, chiefly shoes, the proceeds of which he diverted from the corporation to his own personal pocket. His method of operation was to intercept bills of lading before they reached the petitioner's bookkeeper, to make out invoices for the sales himself, and then personally to collect the amounts of the sales from the customers. He did not report the amounts thus appropriated in his individual income tax returns, nor did he report those amounts in the petitioner's federal tax returns which he

[1]. In January 1946, Hyman's son David bought 200 shares of the petitioner's pre- ferred stock for cash at its par value of $100 per share.

executed under oath and filed on its behalf. Nevertheless, he included in the petitioner's returns the cost to it of the goods sold as described above. There is no evidence that any of the other officers or directors of the corporation, or any employee, had any knowledge of Hyman Auerbach's diversion of the proceeds of sales of corporate property to his own account, or of the petitioner's failure to disclose the amounts of those sales in its tax returns.

In May 1947, the petitioner voluntarily disclosed to the Commissioner that it had unreported income for its fiscal years 1943, 1944, 1945, and 1946. Thereupon the Commissioner ordered an examination of the petitioner's books which disclosed substantial deficiencies in its federal taxes for its fiscal years 1944 and 1945. But the examination also disclosed that the petitioner had suffered a net operating loss in its fiscal year 1947. In May 1948 the petitioner filed an application for tentative carry-back adjustment by reason of that net operating loss, and because of that loss and an unused excess profits credit, the petitioner's tax liability for the fiscal years involved (1944 and 1945) was modified to the extent of showing an overassessment for the later year and a reduced deficiency for the earlier one. The Commissioner added a 50% fraud penalty to the net deficiency of the earlier year but the overassessment for the later year was still great enough to show the petitioner entitled to a refund. The petitioner executed a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment" (Form 874) setting forth the Commissioner's computation of its taxes as described above and in due course thereafter the petitioner received a refund in the net amount of overassessment.

 In making his computation of tax in 1948 the Commissioner followed the long-established practice of the Bu-reau of Internal Revenue which was first set out in a Treasury Ruling in 1923, the relevant portion of which provided:

"Where a return contains a fraudulent understatement of tax and there is therefore a deficiency in the tax, but the deficiency is wiped out by applying a deduction allowable under section 204 [of the Revenue Act of 1918], the ad valorum fraud penalty provided in section 250(b) is not applicable, since upon the redetermination under section 204 there is no deficiency within the meaning of section 250(b)."[2]

But early in 1950 the Supreme Court of the United States decided Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346, and later that year, in the light of that decision, the above Ruling was revoked and a new one promulgated reading:

"Interest and penalties assessed and collected in connection with a Federal income tax liability should not be credited or refunded even though such tax liability is reduced or eliminated by net operating loss carry-backs."[3]

In September 1951, the Commissioner mailed notice of the deficiencies in the additions to basic taxes for fraud with which we are here concerned, which were obviously determined in accordance with the Ruling of the year before quoted last above, for the penalties were computed on the basis of the original deficiencies in excess profits taxes and declared value excess profits tax for the fiscal years 1944 and 1945 before application of the excess profits credit and net operating loss carry-back.

The petitioner does not question the validity in general of the last quoted Ruling, but advances three arguments in support of the proposition that it is inapplicable here. Its first and principal one is that the Commissioner, having ascertained, assessed, and collected a fraud penalty in 1948, had no statutory

2. L.O. 1115, Internal Revenue Bulletin, Cumulative Bulletin II–2, 221 (1923).

3. G.C.M. 26455, Internal Revenue Bulletin, Cumulative Bulletin 1950–1, 118.

authority to come back some two years later and, using a different method of calculation, assess a balance of penalty for the same fraud determined on the basis of his recomputation. That is to say, the argument is that the Commissioner, having once made a determination of fraud and assessed and collected a penalty therefor, exhausted his statutory power, with the result that, although he still had power to impose an additional fraud penalty calculated on additional income should any subsequently be found to have accrued to the taxpayer, he had no power to assess any balance of penalty for the old fraud based on another method of computation. We do not agree.

Section 293 of the Internal Revenue Code, 26 U.S.C.A., under the heading "Additions to the tax in case of deficiency", provides, with an exception irrelevant here, in its paragraph (a) headed "Negligence":

"If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, * * *."

And paragraph (b) of the section, under which the penalty with which we are concerned was assessed, provides under the heading "Fraud":

"If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be *so* assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2)." (Italics supplied.)

The petitioner makes a rather involved argument resting on the word "so", which we italicised in quoting paragraph (b) above, in the effort to show that the Commissioner is required to assess fraud penalties "in the same manner" as the additions to tax for fraud provided in § 3612(d) (2), I.R.C., which, by virtue of the latter section's paragraph (e), must be assessed "at the same time" as some part of the basic tax. We do not pause to state the argument in full or to consider it in detail, for we find it specious if for no other reason because it would import the provisions of § 3612, which is applicable to fraudulent returns of internal revenue taxes generally, into § 293 (b) which is applicable specifically to fraudulent income tax returns, and this in spite of the clear provision in the latter section that the addition to income tax therein provided shall be "in lieu of" the addition to internal revenue taxes generally provided in § 3612(d) (2). We agree with the Tax Court that § 3612 is not here involved.

It seems to us clear that paragraphs (a) and (b) of § 293 are to be read together, and that read in that manner the word "so" in (b) refers to the phrase "in the same manner as if it were a deficiency" in (a). This interpretation equates the assessment, collection, and payment of additions to tax in case of deficiencies due to fraud to the assessment, collection, and payment of additions to tax in case of deficiencies due to negligence which we think must have been intended because of the parallel language of the two paragraphs under consideration. In short, we agree with the Tax Court's interpretation of the statute in the instant case and in Thomas J. McLaughlin, 1933, 29 B.T.A. 247, upon which it relied. Since, in the absence of a closing agreement under § 3760, I.R.C., or a compromise under § 3761, *id.*, there is nothing to prevent the Commissioner from making a recomputation of any taxpayer's tax for a given year, and determining and assessing a second deficiency for that year based on such recomputation, the petitioner's first contention avails it nothing. See Payson v. Commissioner, 2 Cir., 1948, 166 F.2d 1008.

Its second contention is also without merit. This is that the petitioner's execution of Form 874 entitled "Waiver of Restrictions on Assessment and Col-

lection of Deficiency in Tax and Acceptance of Overassessment", and the Commissioner's acceptance of the waiver and payment of the overassessment shown therein, constituted an "account stated" which precluded the Commissioner from subsequently asserting any further deficiency in tax.

■ An account stated is by definition a final, unconditional, definitive statement of account, Stearns Co. of Boston, Mass. v. United States, 1934, 291 U.S. 54, 66, 54 S.Ct. 325, 78 L.Ed. 647, and the waiver clearly was no such thing for in a note appearing on the form it is expressly stated that although its execution will expedite the adjustment of the tax liability indicated therein, "It is not, however, a final closing agreement under Section 3760 of the Internal Revenue Code, and does not, therefore, preclude the assertion of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due, * * *." The point does not warrant further discussion. See Payson v. Commissioner, supra.

The petitioner's third point is that it cannot be held responsible for the fraudulent returns filed on its behalf for the years involved by Hyman Auerbach for the reason that Massachusetts law applies and under that law a corporation cannot be held liable for an independent fraudulent act of an agent acting on his own account and for his own benefit. We find no merit in the contention.

■ In the first place it is hardly conceivable that Auerbach was acting solely for his direct personal benefit and account when he filed fraudulent returns for the petitioner. No doubt he hoped by filing those returns to conceal his wrongful diversion of corporate property and his fraudulent understatement of income in his personal returns. But when creditors' rights are not involved, and so far as the record discloses creditors' rights were not involved here, there is as little point in a sole stockholder cheating his corporation as there is in cheating at solitaire unless, of course, tax consequences result. Thus, while no doubt Auerbach had a purely personal motive in falsifying the petitioner's returns, we think it an inescapable inference that he must also have had a motive to benefit the petitioner by reducing its taxes, whereby he would also stand to gain substantially, although indirectly, as its stockholder.

■ In the second place we think federal tax law, not Massachusetts law, applies under the rule restated in United States v. Pelzer, 1941, 312 U.S. 399, 402, 403, 61 S.Ct. 659, 661, 85 L.Ed. 913, in which the Court said with citations of cases:

"* * * But as we have often had occasion to point out, the revenue laws are to be construed in the light of their general purpose to establish a nationwide scheme of taxation uniform in its application. Hence their provisions are not to be taken as subject to state control or limitation unless the language or necessary implication of the section involved makes its application dependent on state law."

■ In the third place we are not inclined to accede to the petitioner's request that we reconsider and overrule the decision of this court in Currier v. United States, 1 Cir., 1948, 166 F.2d 346, wherein per curiam we affirmed a finding by the district court that a corporation was criminally guilty under § 145(b), I.R.C., on facts strikingly similar to the facts in the case at bar. Perhaps there may be cases in which a corporation ought not to be charged with an addition to its basic tax for fraud based on fraudulent returns prepared by an agent low in the corporate hierarchy. But there will be time enough to consider such cases when they arise. This is not such a case for here the petitioner's fraudulent return was knowingly executed by its dominant officer and stockholder who was in complete control of its affairs. To let the petitioner escape in this situation would be highly unrealis-

tic, would frustrate the clear purpose of the statute, and would be contrary to established authority. See Crescent Manufacturing Co. v. Commissioner, 6 Cir., 1950, 181 F.2d 185, affirming per curiam a memorandum decision of the Tax Court dated August 31, 1948 reported in 1948 P-H, T.C.Memorandum Decisions, paragraph 48,171, and the cases cited therein.

The decision of the Tax Court is affirmed.