GUM PRODUCTS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89170. Filed August 22, 1962.

*W. M. Cramer, Jr.* (an officer), for the petitioner.
*Lawrence A. Wright, Esq.,* for the respondent.

#### OPINION.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the fiscal year ended July 31, 1945, of $15.61, and additions to the excess profits tax under section 293(b) of the Internal Revenue Code of 1939 for the fiscal years ended July 31, 1944, and July 31, 1945, in the amounts of $4,551.30 and $7,970.48, respectively.

Petitioner alleges that the entire amounts so determined are barred by the statute of limitations.

All of the facts are stipulated.

Petitioner was incorporated January 5, 1940, under the laws of the Commonwealth of Massachusetts. Its business is located in East Boston. At all times material hereto petitioner kept its books on

an accrual method of accounting and filed its Federal income tax returns on the basis of a fiscal year ending July 31. Petitioner manufactures chewing gums for sale.

Petitioner timely filed Federal tax returns for the fiscal years ended July 31, 1944, July 31, 1945, and July 31, 1946, and reported and made payments as follows:

| Year | Net income | Income tax | Excess profits tax | Payments |
|------|-----------|-----------|--------------------|----------|
| July 31, 1944 | $156,394.50 | $6,262.09 | $118,853.51 | July 14, 1945 |
| July 31, 1945 | 93,897.26 | 4,800.88 | 63,285.24 | July 15, 1946 |
| July 31, 1946 | 237,716.74 | 54,625.42 | 69,802.30 | July 22, 1947 |

In 1947 petitioner was the subject of an audit covering the fiscal years ended July 31, 1944, 1945, and 1946. The revenue agent's report, dated May 9, 1947, reflected the audit results as follows:

| Year | Income increased | Increase (decrease) income tax | Excess profits tax |
|------|-----------------|-------------------------------|--------------------|
| July 31, 1944 | $13,365.77 | None | $10,692.62 |
| July 31, 1945 | 23,136.79 | ($355.73) | 16,978.64 |

On May 9, 1947, petitioner executed a Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment (Form 874) to the findings noted in the above-mentioned report. The amounts mentioned in the report were assessed on July 25, 1947, and were paid (after reflecting credits) with interest on August 7, 1947.

In 1953 petitioner was the subject of a second audit which covered the same fiscal years as noted above. The revenue agent's report, dated June 4, 1953, reflected the following:

| Year | Income increased | Increase in excess profits tax | Addition to tax, sec. 293(b), 1939 Code |
|------|-----------------|-------------------------------|------------------------------------------|
| July 31, 1944 | $5,549.06 | $4,481.23 | [1] $2,240.62 |
| July 31, 1945 | 3,232.28 | 2,327.24 | [1] 1,163.62 |
| July 31, 1946 | 5,720.85 | None | [2] 631.38 |
| July 31, 1946 | | | [1] 863.45 |

[1] Excess profits tax.
[2] Income tax.

Petitioner admits that part of the deficiencies noted in the preceding paragraph resulted from fraud on the part of petitioner with intent to evade taxes for the fiscal years covered in the revenue agent's report and that the additions to tax as imposed pursuant to section 293(b) of the Internal Revenue Code of 1939 were proper.

During the taxable years ended July 31, 1944, and July 31, 1945, petitioner, with intent to evade tax, failed to keep adequate and com-

plete books of account and records of its business and income-producing activities as required by the applicable provisions of the Internal Revenue Code of 1939 and the regulations promulgated thereunder.

Petitioner filed corporate income and excess profits tax returns for the taxable years ended July 31, 1944, and July 31, 1945, with the collector of internal revenue (now the district director) for the district of Massachusetts on which it reported net income in the amounts of $156,394.50 and $93,897.26, respectively, and excess profits net income in the amounts of $157,653.74 and $94,910.58, respectively.

Petitioner had in fact realized for the taxable years ended July 31, 1944, and July 31, 1945, net income of $173,374.30 and $118,844.60, respectively, and excess profits net income of $174,633.54 and $119,857.92, respectively.

During the taxable years ended July 31, 1944, and July 31, 1945, petitioner received taxable additional income from unreported sales of $5,549.06 and $3,232.28, respectively, no part of which was included in its corporation income and excess profits tax returns for the respective years.

The additional income from unreported sales in petitioner's manufacturing and selling of confectionery products was received from Eatsum Food Products Company of New York, New York.

Petitioner's failure to report the additional income referred to in the two immediately preceding paragraphs on its corporation income and excess profits tax returns for the taxable years ended July 31, 1944, and July 31, 1945, was due to fraud with intent to evade tax.

On June 2, 1953, petitioner executed a Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessments (Form 870), to the findings noted in the revenue agent's report dated June 4, 1953. The amounts noted in that report were assessed on September 4, 1953, and were paid with interest on or before September 27, 1954.

On February 10, 1955, petitioner timely filed three claims for refund (Form 843) as follows:

| Year ended July 31— | Refund claimed |
|---|---|
| 1944 | $9,089.96 |
| 1945 | 4,581.06 |
| 1946 | 1,494.83 |

The basis for each claim was listed as follows:

Additional Income Taxes were assessed in 1953 for sales omitted. Cost of these sales were allowed to the extent of the average shown on the return. Actual costs of ingredients bought in excess of O.P.A. Ceiling Prices, was not allowed as per Page 2 of Revenue Agent's Report. A long line of decisions holds that prices paid in excess of O.P.A. ceilings are deductible in computing profits.

As a result of consideration of the issue raised in the filed claims for refund, a reexamination of the internal revenue agent's report of June 4, 1953, was made. Findings upon reexamination are reflected in the internal revenue agent's report dated January 20, 1959, and are as follows:

| Year | Decrease in gross income | Increase (decrease) | | Addition to tax, sec. 293(b), 1939 Code |
| --- | --- | --- | --- | --- |
| | | Income tax | Excess profits tax | |
| July 31, 1944 | $1,935.03 | ($251.59) | ($1,303.90) | [1]$4,551.30 |
| July 31, 1945 | 1,421.73 | 15.61 | (1,037.69) | [1]7,970.48 |
| July 31, 1946 | 2,038.42 | None | None | [2](251.86) |
| July 31, 1946 | | | | [1](283.58) |

[1] Excess profits tax.
[2] Income tax.

The addition to tax assessed pursuant to section 293(b) of the Internal Revenue Code of 1939 as reflected in the revenue agent's report of June 4, 1953, was understated. The failure of the report dated June 4, 1953, to include the additional excess profits taxes determined in the initial report of May 9, 1947, in determining the total applicable amount of excess profits tax subject to the 50-percent addition to tax and the error of allowing as a credit the unused excess profits credit carryback from the fiscal year 1946 caused the understatement of the addition to tax in the 1953 revenue agent's report.

Computation of the addition to tax, as reflected in the revenue agent's report of January 20, 1959, is as follows:

*Fiscal year ended July 31, 1944.*

| | |
| --- | --- |
| Excess profits tax, per revenue agent's report Jan. 20, 1959 | $132,437.35 |
| Excess profits tax, per return as filed | 118,853.51 |
| Difference | 13,583.84 |
| 50% fraud penalty based on difference | 6,791.92 |
| 50% fraud penalty previously assessed—1953 | 2,240.62 |
| Recommended additional fraud penalty | 4,551.30 |

*Fiscal year ended July 31, 1945.*

| | |
| --- | --- |
| Excess profits tax, per revenue agent's report Jan. 20, 1959 | 81,553.43 |
| Excess profits tax, per return as filed | 63,285.24 |
| Difference | 18,268.19 |
| 50% fraud penalty based on difference | 9,134.10 |
| 50% fraud penalty previously assessed—1953 | 1,163.62 |
| Recommended additional fraud penalty | 7,970.48 |

A deficiency in income tax of $15.61 for the fiscal year ended July 31, 1945, was determined.

The overassessments in income tax for the fiscal year ended July 31, 1944, and of excess profits tax for the fiscal years ended July 31, 1944, and July 31, 1945, resulted from allowance by respondent of additional cost of goods sold.

Petitioner admits that the total addition to tax as reflected in the preceding paragraph for the fiscal years ended July 31, 1944, and July 31, 1945 (line—"50 percent fraud penalty based on difference") is correct and could have been assessed if so computed in 1953. However, petitioner asserts that the failure of respondent to assess fully in 1953 estops him from now assessing additional penalties.

The fraud with intent to evade taxes committed by petitioner occurred in the fiscal years ended July 31, 1944, July 31, 1945, and July 31, 1946.

The audits and examinations conducted and noted above were in accordance with applicable law.

Petitioner is not requesting a redetermination of its income tax liabilities for the fiscal years ended July 31, 1944, and July 31, 1946, in paragraph 4 of its petition.

No agreement pursuant to section 3760 of the Internal Revenue Code of 1939, or under a similar section of the 1954 Code, was executed at any time between the petitioner and respondent.

No compromise pursuant to section 3761 of the Internal Revenue Code of 1939, or under a similar section of the 1954 Code, was executed at any time between the petitioner and respondent.

The Waiver of Restrictions on Assessments and Collection of Deficiency in Tax and Acceptance of Overassessment (Form 874) executed by petitioner on May 9, 1947, contained the following statement:

Note.—The execution and filing of this waiver at the address shown in the accompanying letter will expedite the adjustment of your tax liability as indicated above. It is not, however, a final closing agreement under section 3760 of the Internal Revenue Code, and does not, therefore, preclude the assertion of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due, nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax.

The Waiver of Restrictions on Assessments and Collection of Deficiency in Tax and Acceptance of Overassessment (Form 870) executed by petitioner on July 2, 1953, contained the following statement:

Note.—The execution and filing of this form at the address shown in the accompanying letter will expedite the adjustment of your tax liability as indicated above. It is not, however, a final closing agreement under section 3760 of the Internal Revenue Code, and does not, therefore, preclude the assertion of a deficiency or a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due, nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax.

The statutory notice was mailed to petitioner on June 20, 1960. In the statement attached to the notice, the respondent among other things, said:

It has been determined that you are liable for 50 per cent additions to the tax under section 293(b) of the Internal Revenue Code of 1939 for fraud in the amounts of $4,551.30 and $7,970.48 based on deficiencies in excess profits taxes for the taxable years ended July 31, 1944 and 1945, respectively.

It has been determined that there exists a deficiency of $15.61 for the taxable year ended July 31, 1945 in income tax due to the change in the excess profits credit for said year.

Petitioner contends that since the mailing of the statutory notice on June 20, 1960, was more than 6 years after the September 4, 1953, assessments, the determinations made in the statutory notice are barred by the statute of limitations contained in section 276(c) of the Internal Revenue Code of 1939. The material portions of sections 275, 276, and 293 (all in chapter 1) of the 1939 Code are in the margin.[1]

Although the provisions relating to the excess profits tax fell under chapter 2, section 729(a) thereof provided that "All provisions of law (including penalties) applicable in respect of the taxes imposed by Chapter 1, shall insofar as not inconsistent with this subchapter [subchapter E] be applicable in respect of the tax imposed by this subchapter."

The respondent contends that where any part of a deficiency is due to fraud there is no statute of limitations and that under section 276(a), the tax may be assessed "at any time." He further contends that section 276(c) is not applicable for the reason that the deficiencies here in question have not yet been assessed and that the period of limitation referred to in section 276(c) refers only to the collection of the tax after it has first been assessed.

Petitioner argues, however, that the assessments made in 1953 were made by the respondent with full knowledge of all of the existing facts and the law; that the respondent in 1953 used his prerogative in making his determination; that having reduced his 1953 determination of fraud to assessments made on September 4, 1953, he was limited by

---

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

\* \* \* \* \* \* \*

SEC. 276. SAME—EXCEPTIONS.

(a) FALSE RETURN OR NO RETURN.—In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

\* \* \* \* \* \* \*

(c) COLLECTION AFTER ASSESSMENT.—Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax \* \* \*.

SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY.

(b) FRAUD.—If any part of any. deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).

section 276(c) to 6 years to collect such tax; and that having failed in 1953 with all the facts and law before him to assess fully in 1953, the respondent is estopped now (June 20, 1960) from assessing additional penalties on the ground that he had misapplied the law in 1953.

The error committed by the respondent in 1953 occurred in the misapplication of the carryback from the fiscal year July 31, 1946. In applying this carryback the respondent in 1953 computed the 50-percent addition to tax for fraud on the deficiencies in excess profits tax of $4,481.23 for fiscal 1944 and $2,327.24 for fiscal 1945, which were the deficiencies after applying the carryback from 1946 whereas he should have, in accordance with *P. C. Petterson*, 19 T.C. 486, computed the 50-percent addition to the tax for fraud on the deficiencies *undiminished* by the subsequent loss carryback.

It may be noted that the respondent has made three different examinations of petitioner's returns for the years in question. The first was covered by the revenue agent's report dated May 9, 1947. No fraud was found in this examination. The additional taxes shown by this examination were agreed to and were assessed and paid. In 1953 the respondent discovered that petitioner had failed to report certain income in the fiscal years 1944 and 1945 and determined that such failure was due to fraud with intent to evade tax. This was covered by the revenue agent's report dated June 4, 1953. Petitioner conceded the fraud, agreed to the additional taxes and the (incorrect) additions for fraud whereupon these taxes and additions were assessed on September 4, 1953, and paid with interest on or before September 27, 1954. The matter of tax liabilities for these years might have ended at that stage had it not been for the fact that on February 10, 1955, petitioner timely filed three claims for refund for the fiscal years 1944, 1945, and 1946. As a result of these claims a reexamination was made which was covered by the revenue agent's report dated January 20, 1959. The claims were allowed in part but in making the reexamination the respondent discovered his mistake in 1953 in not computing the 50-percent addition to the tax for fraud on the deficiencies *undiminished* by the subsequent loss carryback in accordance with *P. C. Petterson*, *supra*. The correction of this error outweighed the partial allowance of the claims for refund, all of which is disclosed in the statutory notice mailed to petitioner on June 20, 1960.

Under these circumstances we do not think the respondent is estopped from now claiming the deficiencies set out in the statutory notice. These deficiencies have not yet been assessed and when fraud is determined and admitted "the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." Sec. 276(a), *supra*. The 6-year period of limi-

tation set out in section 276(c), *supra*, applies only to the *collection* of the tax *after* it has first been properly assessed.

The facts in this case are substantially on all fours with the facts in *Auerbach Shoe Co.*, 21 T.C. 191, affd. 216 F. 2d 693 (C.A. 1, 1954), except for the important fact, as far as this petitioner is concerned, that the correction of the same kind of an error was made by the Commissioner *within* the 6-year period relied upon by the instant petitioner. There was no necessity to discuss the possible application of section 276(c) in the *Auerbach* case. Nevertheless, in our opinion we said:

> The taxpayer is required to report the correct amount of his income in filing a return. Where this is not done due to the taxpayer's fraudulent conduct, liability for the 50 percent addition to the tax for fraud is incurred and the unforeseen circumstance that a carry-back later arises to offset the deficiency should not operate to relieve the taxpayer of the addition imposed for the fraud. The tax and additions to the tax where the return is false and fraudulent with intent to evade tax may be assessed at any time. Section 276(a), Internal Revenue Code. The liability for the additions to the tax for fraud existed from the time of the filing of the false and fraudulent return with intent to evade tax. The addition is to be measured by the deficiency, undiminished by any subsequent credit or carry-back.

In view of petitioner's contentions regarding the statute of limitations, the *Auerbach* case cannot be said to be in point on that question. However, for reasons previously stated, we do not agree with petitioner that the 6-year period mentioned in section 276(c) bars the assessment of the deficiencies determined in the statutory notice. With that question out of the case we think the respondent's determination here is in line with the *Auerbach* decision, and that what we said in that case applies with equal force here.

The waivers executed by petitioner on May 9, 1947, and on July 2, 1953, were not final closing agreements under section 3760 of the 1939 Code and would not, therefore, preclude the assertion of further deficiencies in the manner provided by law. Cf. *Botany Worsted Mills* v. *United States*, 278 U.S. 282.

We hold that there is no statute of limitations on the assessment and collection of the deficiencies herein determined by the respondent.

*Decision will be entered for the respondent.*