Esquire Motors, Inc. v. Commissioner.
Esquire Motors, Inc. v. Commissioner
Docket No. 2766-66.
United States Tax Court
T.C. Memo 1969-40; 1969 Tax Ct. Memo LEXIS 257; 28 T.C.M. (CCH) 229; T.C.M. (RIA) 69040; February 25, 1969, Filed *257 Held, that the return filed by the petitioner for the taxable year ended September 30, 1955, was false or fraudulent with intent to evade tax and that assessment and collection of any deficiency for such year are not barred by the statute of limitation. Held, further, that the petitioner is liable for addition to tax on account of fraud under section 6653(b) of the,internal Revenue section 6653(b) of the Internal Revenue Code of 1954 for the taxable year ended September Code of 1954 for the taxable ye&r ended September 30, 1955. Held, further, that the respondent has not established that the petitioner's return for the taxable year ended September 30, 1956, was false or fraudulent with intent to evade tax, and consequently assessment and collection of any deficiency for that year are barred by the statute of limitations. Thomas F. Seymour, 1115 Main, Bridgeport, Conn., and John M. Brannelly, 137 Elm, Bridgeport, Conn., for petitioner. Charles M. Costenbader and Ira H.Freedman, for respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax for the taxable years ended September 30, 1955 and 1956 in the amounts of *258 $41,317.55 and $13,380.53, respectively, and additions to tax under section 6653(b) of the Internal Revenue Code of 1954 of $21,537.96 and $13,254.31, respectively. The issues for decision are whether assessment and collection of the asserted deficiencies are barred by the statute of limitations and whether the petitioner is liable for additions to tax under section 6653(b) of the Code. Findings of Fact Some of the facts were stipulated and are incorporated herein by this reference. The petitioner is a Connecticut Corporation. It was organized on October 1, 1946. At the time of the filing of its petition, the petitioner's principal office and its principal place of business was in Bridgeport, Connecticut. The petitioner keeps its books of account and files its returns on an accrual method of accounting and on the basis of a fiscal year ended September 30. At all times relevant to this proceeding, the petitioner's business was the buying and selling of used cars. At all times since its incorporation petitioner has had 100 shares of $100 par value common stock issued and outstanding, held as follows: Vincent Anthony (petitioner's president and hereinafter referred to as "Anthony") 51 *259 shares; Lena Anthony (Anthony's wife) 48 shares; and Margaret Weiss 1 share, which she holds as nominee for Anthony. During the years in question, Anthony was active in the management of petitioner. He bought and sold cars and supervised other employees. For his services he received a salary of $300 per week. He had the sole authority to sign petitioner's checks drawn on its bank account with the Black Rock Bank and Trust Company in Bridgeport, Connecticut. Petitioner employed, as its bookkeeper, Stephen Catandella, Anthony's son-in-law. He prepared checks on petitioner's checking account for Anthony's signature, and made the entries in petitioner's check disbursement ledger. He also did some buying and selling of cars for the petitioner. During the years in question the petitioner retained Ralph Piccolo, Jr., a registered public accountant, paying him $50 per week. He also kept some of the books for petitioner, including the general ledger. At the end of each month he examined the invoices and check stubs and the books and reconciled the bank statements. He prepared year-end profit and loss statements which were for petitioner's guidance and for presentation to the bank. He also prepared *260 petitioner's income tax returns for the years in question. In 1954 Jerome J. Haskell became associated with the petitioner's business under an arrangement with Anthony whereby Haskell was to receive a salary of $300 per week as an employee of petitioner and, in addition, was to receive 50 percent of the profits of the business after deduction of the salary. Haskell became the driving 230 force of the business, doing most of the petitioner's buying and selling. Petitioner had theretofore conducted primarily a retail business, but after Haskell became associated with the business it became primarily a wholesale business, with a smaller profit per car. The volume of petitioner's sales increased from approximately two million dollars per year to approximately ten million dollars during the first year Haskell worked for petitioner. He spent about 30 percent of his time at various places, including Detroit, Miami, and Boston, primarily for the purpose of purchasing automobiles for petitioner. He sometimes spent as much as a week at a time in Detroit. Sometime prior to September 30, 1955, Anthony loaned Haskell about fifteen thousand dollars, which was used by Haskell as part payment on a *261 home in the Bridgeport area. He entertained customers and prospective customers at such house. He also maintained an apartment in Detroit which he used while in Detroit buying cars. Piccolo prepared a profit and loss statement and a Federal income tax return for the petitioner for the taxable year ended September 30, 1955, which he, in early December 1955, presented to Anthony and Haskell at the petitioner's office, a small building located on petitioner's sales lot. Catandella was also present. Haskell was upset at the amount of tax shown due and called Piccolo an idiot. He stated that the tax was too high and that the figures used by Piccolo should be changed. He asked Piccolo whether any more deductions could be taken and Piccolo replied in the negative. Thereafter Haskell called an attorney in New York and Haskell and Anthony asked advice of an accountant located in Stamford, Connecticut. The attorney and the accountant each told them that in view of the amount of business done by the petitioner it should be able to take a greater amount of deductions. A few days later, prior to December 15, Haskell called Piccolo back to the petitioner's office to attend a conference held by *262 Anthony, Haskell, Catandella, and the accountant from Stamford. Haskell advised Piccolo that it was proposed to claim on the return a deduction for travel and entertainment expenses, and there was discussed the matter of claiming such a deduction and the amount thereof. Other than an amount of $406.21 for customers' entertainment and an amount of $319.05 of convention expense, the petitioner's books of account did not contain any entry of any travel or entertainment expense, and the profit and loss statement and the return which Piccolo had prepared did not take into account any greater amount therefor. Nor were there any vouchers or any other verification of any travel and entertainment expenses which might have been incurred by any of petitioner's officers or employees. The question of claiming a deduction based upon an estimate was considered, and Haskell, Anthony, Catandella, and the Stamford accountant agreed that an amount of $40,800 should be claimed for such expenses. Haskell suggested to Anthony that the petitioner should issue checks in that aggregate amount and designate them as being for travel and entertainment. Anthony had not theretofore heard of the term "travel and *263 entertainment." Piccolo stated that the issuance of such checks and the taking of deductions for travel and entertainment expense would be the act and responsibility of petitioner's management. Three checks were then drawn by Catandella on petitioner's bank account at the Black Rock Bank and Trust Company, as follows: Check No.
Payee
Amount
22225
Jerome J. Haskell
$21,000
22254
Vincent Anthony
16,000
22255
Steve Catandella
3,800 The checks were predated to September 30, 1955, and the amounts thereof were entered in petitioner's check disbursements journal for September 1955, as "Travel Entertainment." Piccolo then prepared another Federal income tax return for the petitioner's taxable year ended September 30, 1955. This return included a deduction for "Travel and Entertainment Expense" in the amount of $40,800 under "Other Deductions." This return was signed by Anthony as petitioner's president, and was filed with the district director of internal revenue, Hartford, Connecticut. It is stamped as having been received by the director on December 19, 1955. Anthony signed the above checks which were payable to himself and Catandella. He did not sign the check payable to Haskell or deliver it to Haskell, *264 and such check has never been paid by petitioner. The check payable to Anthony was endorsed by him and deposited in the petitioner's checking account on December 15, 1955. The check payable to Catandella was cashed by him on July 11, 1956. At the time the 231 checks were drawn, the petitioner did not have sufficient funds in its checking account to pay them. At some time around the end of the taxable year ended September 30, 1956, after examining the profit and loss statement for such year, Haskell and Piccolo recommended to Anthony that bonuses be paid by the petitioner, and Anthony approved the recommendation. Sometime within a month after the close of the taxable year ended September 30, 1956, Catandella drew checks on the petitioner's bank account in the following amounts to the following persons: Check No.
Payee
Amount
26445
Stephen J. Catandella
$ 3,250
26446
Jerome J. Haskell
19,000
26447
Vincent Anthony
19,000 The above checks were pre-dated to September 29, 1956, and were recorded in the check book stubs as being the remainder of bonuses paid to the above three individuals in the respective amounts of $5,000, $25,000, and $25,000, after subtracting withholding tax in the respective amounts *265 of $1,750, $6,000, and $6,000. The amounts of the above checks, together with amounts shown as retained as withholding tax, were entered in the petitioner's check disbursements ledger as "Gross Payroll," and were claimed as deductions on its Federal income tax return for the taxable year ended September 30, 1956, as compensation. Such return was filed with the district director of internal revenue at Hartford, Connecticut, and is stamped as having been received by the director on December 17, 1956. The above check made payable to Haskell was never signed or delivered to Haskell, and has not been paid by the petitioner or cleared through its bank account. Piccolo also requested a bonus and, due to the increased amount of services he had had to perform for petitioner, he received a check in the amount of $2,000 dated September 29, 1956. At some later date either Piccolo or Haskell asked Anthony to give the two uncashed checks to Haskell, but he refused. Piccolo advised Haskell that amended returns for the taxable years ended September 30, 1955 and 1956 should be filed to restore to income the amounts of the uncashed checks. Anthony made no reply. Sometime after the taxable years in question *266 Haskell left the petitioner's employ. Since that time there has been no accounting between petitioner and Haskell with respect to how much, if any, is owing to him as salary or under his profit-sharing arrangement. Haskell never sued the petitioner for any amount due him. In its return for the taxable year ended September 30, 1955, the petitioner reported gross sales of $10,218,933.59, gross profit from sales of $311,784.60, total income of $314,327.73, total deductions of $282,204.88 (which included the above-mentioned claimed travel and entertainment expense of $40,800), taxable income of $32,122.85, and a tax liability of $11,203.88. In the notice of deficiency, which was dated February 28, 1966, the respondent made a number of adjustments with respect to income and deductions, including the disallowance in full of the item of $40,800 claimed for travel and entertainment, and determined that the petitioner for that year had taxable income of $94,542.12 and that there was a deficiency in tax of $41,317.55. In its return for the taxable year ended September 30, 1956, the petitioner reported gross sales of $5,096,426.52, gross profit from sales of $240,363.57, total income of $243,912.77, *267 total deductions of $233,926.07, taxable income of $9,986.70, and a tax liability of $2,996.01. The deductions included $40,600 for compensation of Anthony and salaries and wages of others of $78,867.50 which included among others things the above total of $30,000 claimed as bonuses paid to Haskell and Catandella. In the notice of deficiency the respondent made a number of adjustments with respect to income and deductions, including the disallowance of $25,000 of the amount of compensation claimed for Anthony and the $30,000 referred to above of the amount claimed as other salaries and wages. The respondent also determined "that all or part of the underpayment of tax required to be shown on the returns for the taxable years ended September 30, 1955, and September 30, 1956, is due to fraud. Consequently, the 50 per centum addition to the tax provided by section 6653(b) of the Internal Revenue Code of 1954 is asserted for these years." The petitioner's return for the taxable year ended September 30, 1955, was false or fraudulent with intent to evade tax. Some part of the underpayment of tax required to be shown on such return is due to fraud. Opinion Assessment and collection of any *268 deficiencies for the taxable years ended September 30, 1955 and 1956 are barred unless the returns were false or fraudulent with intent 232 to evade tax. [1] And whether the petitioner is liable for the 50 percent addition to tax for those years depends upon whether any part of any underpayment of tax for those years is due to fraud. [2]
Upon the issue of fraud the burden of proof is upon the respondent. Section 7454 of the Internal Revenue Code of 1954. Fraud is never presumed, but must be shown *269 by clear and convincing evidence. Kreps v. Commissioner, (C.A. 2) 351 F. 2d 1, affg. 42 T.C. 660; Archer v. Commissioner, (C.A. 5) 227 F. 2d 270, affg. a Memorandum Opinion of this Court; and Bryan v. Commissioner, (C.A. 5) 209 F. 2d 822, affg. a Memorandum Opinion of this Court. Mere suspicion of fraud and mere doubts as to the intentions of the taxpayer are not sufficient to justify a holding of fraud. L. Glenn Switzer, 20 T.C. 759; Walter M. Ferguson 14 T.C. 846; and J. William Schultze, 18 B.T.A. 444. Direct evidence of a specific fraudulent intent is seldom available and whether fraud exists must be determined from the conduct of the taxpayer and from the surrounding circumstances. M. Rea Gano, 19 B.T.A. 518. Based upon a careful consideration of the evidence, we have concluded and have found as a fact that the petitioner's return for the taxable year ended September 30, 1955, was false or fraudulent with intent to evade tax and that some part of the underpayment of tax for that year is due to fraud. It was well after the close of such taxable year that the petitioner first conceived the idea of reducing its tax by claiming a total amount of $40,800 as purported reimbursement *270 of travel and entertainment expenses incurred by its officers and employees. The petitioner's books of account do not contain any record of any such expenditures or of any liability on the part of the corporation for reimbursement, and such officers and employees had no vouchers or other verification of any expenditures made on behalf of the corporation. We think it reasonable to conclude that if they had incurred expenses under any arrangement for reimbursement they or the petitioner would have kept some records of the expenditures. Furthermore, if indeed there were any such expenditures, and if there was an arrangement for reimbursement, we think the bookkeeper Catandella would have called this to the attention of Piccolo, especially since Catandella was one of those who purportedly was later reimbursed. The decision to claim these amounts as deductions resulted from the fact that Haskell, who had an arrangement with Anthony, the petitioner's principal stockholder, to receive one-half of the profits of petitioner's business, insisted that more deductions be taken when he learned the amount of tax shown on the proposed return prepared by the accountant, and suggested that this be *271 done by issuing checks in December 1955 as purported reimbursement of travel and entertainment expenses. The fact that the check prepared in December 1955 in his favor in the amount of $21,000 as purported reimbursement of travel and entertainment expense was not signed by Anthony and delivered to him, or indeed ever paid, and the fact that a check drawn at the same time in favor of Anthony for $16,000 for the same purported purpose was immediately deposited in the petitioner's bank account convince us that the checks were mere devices to make it appear that during the taxable year there was an accrued liability on the part of the petitioner to make reimbursement in the amounts claimed, whereas this was not in fact true. Anthony, in an attempt to explain his failure to deliver the check to Haskell, stated that Haskell owed him an amount of about $15,000 on account of a loan which he had made to Haskell for the purpose of purchasing a home. This explanation does not ring true since the claim here made is that it was the corporation, and not Anthony personally, which was indebted to Haskell for reimbursement, and the fact that in any event the debt of $15,000 was $6,000 less than the *272 amount claimed to be owing to 233 Haskell as reimbursement for expenditures on behalf of the corporation. While it is true that Haskell did some traveling and entertaining in connection with his buying and selling of cars, Anthony's refusal to deliver Haskell his check and his action in depositing his own check immediately in the account of the corporation seem more consistent with the view that under the 50 percent sharing arrangement between him and Haskell, the latter was not entitled to reimbursement from the corporation of any travel or entertainment expenses he might incur in the purchase and sale of cars. In addition, it should be pointed out that Catandella, although testifying that he did have some traveling and entertainment expenses, admitted that he knew that such expenses were not as great as the amount of the check, $3,800, which was given him purportedly as reimbursement of travel and entertainment expenses. We turn, then, to a consideration of the amount of the deficiency in tax for the taxable year ended September 30, 1955. The respondent's determination thereof is presumed to be correct and the burden of proof is upon the petitioner to show error therein. Welch v. Helvering, 290 U.S. 111, *273 and Helvering v. Taylor 293 U.S. 507. The petitioner has not met such burden. No evidence was adduced as to any of the amounts put in issue by the petition except the claimed reimbursed travel and entertainment expenses. As indicated above in our discussion of the issue of fraud, we are convinced that the corporation was not obliged to make reimbursement of travel and entertainment expenses, at least not to the extent claimed by the petitioner in its return. Even if it was liable to make some reimbursement, there is no basis whatever in the record for us to determine the amount thereof. Under such circumstances, there would be no justification for making an estimate under the so-called Cohan rule. See Chesbro v. Commissioner, (C.A. 2) 225 F. 2d 674. Accordingly, the deficiency and addition to tax for the taxable year ended September 30, 1955, under section 6653 (b) of the Code, as determined by the respondent are approved. [3] *274 With respect to the taxable year ended September 30, 1956, we are of the opinion that the respondent has not met his burden of showing by clear and convincing evidence that the return was false or fraudulent with intent to evade tax. In support of his contention that the petitioner's return was false or fraudulent, he relies principally upon the fact that a check for $19,000 drawn in favor of Haskell and claimed by the petitioner as a bonus payment was not signed, delivered, or cashed. The failure to deliver and pay the check given to Haskell does create in our minds some doubt as to whether there was a bona fide intention to pay him a bonus for that year, particularly since Anthony's testimony as to the reason was the same as in the case of the undelivered check in favor of Haskell in the previous year. However, the petitioner did withhold as taxes an amount of $6,000 from the amount of $25,000 agreed upon as the bonus for Haskell and, insofar as the record shows, such amount was reported and paid as withholding tax. Also, insofar as has been shown, the $3,250 bonus check given *275 to Catandella and the $19,000 bonus check given to Anthony were both cashed. With respect to the bonuses agreed upon for them a total amount of $7,750 was withheld as taxes and, insofar as shown, that amount was reported and paid as withholding tax. In support of his allegation of fraud, the respondent also calls attention to the size of the bonuses agreed upon for Anthony and Haskell as compared with their yearly salaries. He also claims that the decision to pay such bonuses was made after the close of the taxable year. The record does not sustain the respondent's contention that the decision to pay the bonuses was made after the end of the taxable year, although the checks themselves were drawn after the close of the year. And even if it were concluded that the bonuses were excessive, such added factor would not, in our opinion, be sufficient to support a conclusion that fraud had been established by clear and convincing evidence. We hold that assessment and collection of any deficiency for the taxable year ended September 30, 1956, are barred by the statute of limitations. Decision will be entered in accordance with the foregoing. 234 Footnotes
1. Section 6501(c)(1) of the Internal Revenue Code of 1954 provides as follows: (c) Exceptions. - (1) False return. - In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. ↩
2. Section 6653(b) of the 1954 Code provides as follows: (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).↩
3. The respondent properly determined the addition to tax by using as the base the under-payment of tax computed without reference to a net loss carryback from a subsequent taxable year. P.C. and Ethel Petterson, 19 T.C. 486; Gum Products, Inc. [Dec. 25,624], 38 T.C. 700; and Simon v. Commissioner, (C.A. 8) 248 F. 2d 869↩, affg. on this issue a Memorandum Opinion of this Court.