ROBERT C. LYONS AND SUSAN C. LYONS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lyons v. Commissioner
Docket No. 28078-88
United States Tax Court
T.C. Memo 1991-84; 1991 Tax Ct. Memo LEXIS 96; 61 T.C.M. (CCH) 2020; T.C.M. (RIA) 91084; February 28, 1991, Filed *96 Decision will be entered under Rule 155. George R. Pain, for the petitioner. Michael A. Urban, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1979, 1980, 1982, 1983, and 1985 as follows: Additions to Tax Under Sections
Year
Deficiency
[1] 6653(a) 6653(a)(1)
6653(a)(2)
6661
1979
$ 990    $ 49   --   --
--    1980
25,721
1,286
--   --
--    1982
594,801
-- $ 29,740
*
$ 148,700
1983
799,916
-- 39,996
*
200,064
1985
2,257
-- 113
*
--    After concessions, the issues for decision are: (1) Whether petitioners are liable for additions to tax for negligence under *97 sections 6653(a)(1) and (2) for taxable year 1982. We hold that they are not. (2) Whether petitioners are liable for an addition to tax under section 6661 because of a substantial understatement of income tax for taxable year 1982. We hold that they are not. (3) Whether respondent's refusal to waive all or part of the addition to tax under section 6661 was an abuse of discretion. We hold that it was. FINDINGS OF FACT Petitioners resided in Spring, Texas, when the petition in this case was filed. 1. Resolved Issues
All issues raised by the notice of deficiency have been settled except for the additions to tax for negligence for 1982 and substantial understatement of tax for 1982. For taxable year 1982, petitioners reported taxable income of $ 20,119. In the notice of deficiency, respondent determined that petitioners had taxable income of $ 1,218,565 for 1982. The parties agree that petitioners' taxable income for 1982 is $ 530,631, without allowance for the net operating loss carryback from 1983 to 1982. The parties agreed to the following adjustments for Schedules A and C for 1982: 1982
Allowed per
notice of
Allowed per
Item
Per Return
deficiency
agreement
Cost of Goods Sold
$ 2,970,566
$ 1,876,873
$ 2,489,778
Auto and Truck
23,231
16,174
16,174
Depreciation
27,317
23,192
23,192
Insurance
69,865
18,699
69,865
Taxes
81,341
76,958
76,958
Travel and
Entertainment
17,427
6,923
6,923
Equipment Rental
68,489
49,626
68,489
Legal Settlement
5,000
-0- 5,000
Contributions
3,886
-0- -0-
Sales Tax
437
668
668
Totals
$ 3,267,559
$ 2,069,113
$ 2,757,047
*98 On their 1982 income tax return, petitioners reported a total tax liability of $ 4,425. The parties agree that petitioners' approximate tax liability (without regard to net operating loss carrybacks) for 1982 is $ 254,425. Accordingly, there is a statutory deficiency in income tax, i.e., a deficiency to be assessed, of approximately $ 250,000 for taxable year 1982. However, as a result of the net operating loss carryback from 1983 to 1982, the parties agree that there is no deficiency to be paid for taxable year 1982. Petitioners reported a taxable loss of $ 223,490 for 1983. In the notice of deficiency, respondent determined that petitioners had taxable income of $ 1,625,453. However, the parties agree that petitioners' taxable loss for 1983 was $ 712,442. Respondent concedes that the additions to tax for negligence under section 6653(a) and substantial understatement of tax under section 6661(a) do not apply for 1983. The parties agreed to the following adjustments for Schedules A and C for 1983: 1983
Allowed per
notice of
Allowed per
Item
Per Return
deficiency
agreement
Cost of Goods Sold
$ 3,724,300
$ 2,072,745
$ 4,204,314
Auto and Truck
2,441
-0-   2,441
Depreciation
28,163
21,893
21,893
Insurance
53,683
-0-   53,330
Taxes
80,205
80,205
80,205
Travel and
Entertainment
20,678
-0-   10,205
Equipment Rental
89,311
-0-   102,603
Transportation
18,387
-0-   31,129
Legal Settlement
7,286
-0-   7,286
Sales Tax
-0-
668
668
Totals
$ 4,024,454
$ 2,175,511
$ 4,514,074
*99 2. Background
Petitioners lived in New Jersey before moving to Texas in 1977. Petitioner husband graduated from high school, but did not attend college. Petitioner husband worked in construction for thirteen years in New Jersey. Petitioner wife graduated from high school and attended one semester of college. Petitioners had three daughters. Petitioner wife did not work outside the home during her married years before 1982. Petitioners' tax returns were prepared by an income tax preparer when they lived in New Jersey. Petitioners have no accounting or bookkeeping training or background. 3. Lone Star Acoustics
From 1979 through 1985, petitioners owned Lone Star Acoustics, a ceiling and dry wall construction contractor with 30 to 165 employees. From 1978 to 1981 petitioners' tax returns were prepared by a preparer or accountant. Petitioners recorded receivables and payables each month. At the recommendation of a bank from whom petitioners sought a business loan, petitioners retained a C.P.A. to prepare a monthly statement and tax returns. Don Land was their C.P.A. during 1982 and part of 1983. He came into their office, set up their bookkeeping system, and *100 told petitioner husband what needed to be done. Petitioners kept ledgers of accounts receivable and accounts payable which Don Land used to prepare a monthly statement for petitioners. Petitioner wife started working for Lone Star Acoustics part-time in 1982 and full time in 1983. She ordered and arranged timely delivery of materials for jobs being performed by the company, and answered the phone. She kept the books of Lone Star Acoustics during the first half of 1982. She did not feel fully comfortable keeping the books; she followed the directions that were in the bookkeeping book. Sue Collier was employed by Lone Star Acoustics to keep the books needed by Don Land during the second half of 1982 and all of 1983. Sue Collier had previously worked as a bookkeeper for a general contractor. Petitioner wife helped Sue Collier keep the payroll. 4. Preparation of Petitioners' Tax Returns
Don Land prepared petitioners' 1982 income tax return. Petitioners reviewed the return before signing it, but did not fully understand it. They relied on Don Land to prepare it correctly. In 1983 petitioner husband became concerned about Don Land's work for them. Petitioners changed *101 accountants in late 1983 because they believed Don Land did not do the job they paid him for in 1982 and 1983. Another reason is that petitioners could not pay him, beginning in December 1983. Don Land later left the firm he was with when he was performing services for petitioners. Petitioners never recovered any of their records from Don Land or his prior firm. They attempted to recover the records but were unsuccessful. An accountant named Bob Hopkins prepared petitioners' 1983 income tax return. Petitioners reviewed the 1983 tax return before signing it, but did not fully understand it. They assumed it was prepared correctly. 5. Bankruptcy of Loan Star Acoustics
In December 1983, petitioner husband discovered with little notice that he had to close Lone Star Acoustics due to a lack of funds. In January 1984 petitioners filed chapter 7 bankruptcy. Gary Knostman was the bankruptcy trustee. Barbara Jean Rutledge was an administrative assistant for Gary Knostman. The trustee's office customarily requested a bankruptcy petitioner's bank statements and canceled checks for the 12 months preceding his bankruptcy petition. The parties dispute which records were actually *102 provided. We conclude that petitioners gave 8 to 12 boxes of records to the bankruptcy trustee, including some of their 1982 records. Petitioner wife helped pack the boxes of records, and petitioner husband loaded them into a van. Petitioners did not ask for a receipt for the records they provided to the trustee. The record contains no evidence that the trustee's office made a record of the number of boxes it received. Petitioners did not retain a copy of the records they provided to the trustee. The trustee's office gave petitioners' records to a Houston law firm, Sewell & Riggs. Respondent conducted a field audit of petitioners for the years at issue which began in 1986 and lasted more than one year. The field agent requested petitioners' 1982 and 1983 records. Petitioners told the field agent that the trustee had the records. Petitioners called the trustee repeatedly to attempt to locate the records. Petitioners asked the field agent for assistance in recovering the records. Petitioners contacted sources to which the trustee's office referred them. The trustee's office had given petitioners' records to a Houston law firm. Petitioners recovered two large boxes of records *103 from one lawyer in Houston. Petitioners also got back a shopping bag of their records from another lawyer. Some of petitioners' 1982 records were recovered from the law firm or firms. Petitioners also requested records from their suppliers, but did not obtain them. Petitioners' counsel later issued subpoenas to several of the suppliers and obtained some records. OPINION 1. Records Given to the Trustee and to Petitioners' Accountant
The parties dispute whether petitioners maintained adequate records, and whether 1982 records were given to the trustee. Respondent contends that petitioners did not have sufficient records for 1982 and disputes the amount of materials given to the trustee. Petitioners contend that they had adequate 1982 records, but that the records were given to the bankruptcy trustee. Barbara Rutledge testified that the best that she could recall was that two boxes of petitioners' records were delivered to the trustee. Petitioners testified that about 10 boxes were delivered. Barbara Rutledge was unable to deny the truth of petitioners' testimony. She thought it was possible that she did not see all of petitioners' records given to the trustee. Barbara *104 Rutledge testified that she scarcely recognized petitioners. She admitted that her memory was not very clear because it had been about five years, and they handle several thousand cases each year. We find petitioners' testimony that they gave about 10 boxes, including their 1982 records, to be credible. Also, petitioners retrieved some of their 1982 records from a Houston law firm. There is no explanation how the law firm obtained petitioners' 1982 records other than from the trustee. Accordingly, we believe petitioners' testimony that they gave 1982 records to the trustee. 2. Negligence
The next issue for decision is whether any part of petitioners' underpayment of tax for 1982 is due to negligence. If any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations, there is added to the tax an amount equal to 5 percent of the underpayment and an amount equal to 50 percent of the interest payable under section 6601 with respect to that portion of the underpayment attributable to the negligence or intentional disregard. Sec. 6653(a)(1) and (2). Petitioners have the burden of showing that their underpayment was due to neither *105 negligence nor intentional disregard of rules and regulations. Rule 142(a); Barton v. Commissioner, 424 F.2d 1295, 1296 (7th Cir. 1970); Marcello v. Commissioner, 380 F.2d 499, 507 (5th Cir. 1967). Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Marcello v. Commissioner, supra at 506; Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "underpayment," for purposes of section 6653(a), means a deficiency as defined in section 6211. Sec. 6653(c)(1). The parties stipulated that for the taxable year 1982 there is a statutory deficiency, i.e., a deficiency to be assessed, of approximately $ 250,000. Since there is a deficiency of approximately $ 250,000, there is also under section 6653(c)(1) an underpayment of tax in that amount for purposes of section 6653(a). As a result of a net operating loss carryback from 1983 to 1982, there is no deficiency to be paid for 1982. A taxpayer cannot, however, utilize a net operating loss carryback when computing the addition to tax under section 6653(a)(1). McCauley *106 v. Commissioner, T.C. Memo 1988-431; Blanton Coal Co. v. Commissioner, T.C. Memo 1984-397. See also Auerbach Shoe Co. v. Commissioner, 21 T.C. 191, 196 (1953), affd. 216 F.2d 693 (1st Cir. 1954); C. V. L. Corp. v. Commissioner, 17 T.C. 812, 816 (1951). Section 6001 imposes upon all taxpayers the obligation to maintain at all times accurate books and records to enable substantiation of income and expenses. Petitioners here had a reasonable system for maintaining financial records and preparing their tax returns. They maintained records to be used to prepare their returns. They maintained a relationship with an accountant who prepared their returns. They checked their returns to the best of their ability when signing them. Many of their records for 1982 were not available to them. Some were relinquished by petitioners as part of their bankruptcy and not returned. While it is true that they did not keep copies of those records, we believe that to be reasonable in light of the substantial cost involved in photocopying petitioners' enormous number of records. In addition, some of their records were *107 not recovered from their accountant. Respondent relies on the testimony of Ms. Rutledge, and a requested inference regarding petitioners' failure to call certain additional witnesses, such as Don Land, Gary Knostman, or anyone from the law firm Sewell & Riggs. Respondent further maintains that because petitioners issued subpoenas to only a few suppliers, they failed to demonstrate an effort to duplicate or reconstruct their missing records. Notwithstanding these factors, we are convinced by petitioners' testimony and the rest of the record in this case that they were not negligent. 3. Substantial Understatement of Income Tax
The next issue for decision is whether petitioners are liable for the addition to tax for substantial understatement of tax under section 6661(a). Section 6661(a) provides for an addition to tax in the amount of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. An understatement is the amount by which the correct tax exceeds the tax reported on the return. Sec. 6661(b)(2)(A); Mailman v. Commissioner, 91 T.C. 1079, 1081 (1988). An understatement is substantial if it exceeds *108 the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The amount of tax required to be shown on the return is determined without regard to any net operating loss carryback. Sec. 1.6661-2(d)(2), Income Tax Regs.
Petitioner bears the burden of proving that imposition of the addition to tax under section 6661 is erroneous. Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 506 (1989). On their 1982 income tax return, petitioners reported a tax liability of $ 4,425. Petitioners' corrected tax liability, i.e., the amount of tax required to be shown on their return, is approximately $ 254,425. The understatement for the taxable year 1982 is, therefore, approximately $ 250,000. The addition to tax for substantial understatement of tax is reduced if the taxpayer qualifies under either of two provisions. Section 6661(b)(2)(B) provides that the understatement shall be reduced to the extent it is attributable to (1) the tax treatment of any item by the taxpayer for which there is or was substantial authority, or (2) any item for which the relevant facts affecting the item's tax treatment are adequately disclosed *109 on the return or in an attached statement. Petitioners substantially understated their 1982 tax. The record shows that there is neither substantial authority nor adequate disclosure on their return entitling them to any reduction in the addition to tax. Accordingly, petitioners are liable for the section 6661 addition to tax for 1982, unless we conclude that respondent's failure to waive some or all of it was an abuse of discretion. Mailman v. Commissioner, supra at 1083-1084. 4. Waiver of Addition to Tax for Substantial Understatement of Income tax Respondent may waive all or part of the addition to tax under section 6661 upon a showing by the taxpayer that there was reasonable cause for part or all of the understatement and that the taxpayer acted in good faith. Sec. 6661(c). [2] Denial of a waiver is reviewable by the Court. Mailman v. Commissioner, supra at 1083. The question for the Court is not whether it would have decided the matter differently, but whether not granting a waiver is an abuse of discretion. Mailman v. Commissioner, supra at 1084. The most important factor in determining reasonable cause *110 and good faith is the extent of petitioners' efforts to properly report their tax liability. Sec. 1.6661-6(b), Income Tax Regs.; Mailman v. Commissioner, supra.
Under the circumstances, we find that respondent abused his discretion. See Varney v. Commissioner, T.C. Memo 1991-14. Accordingly, petitioners are relieved from the addition to tax under section 6661. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. This amount cannot be computed until the date of assessment.↩
2. Section 6661(c) provides as follows: Sec. 6661(c). AUTHORITY TO WAIVE. -- The Secretary may waive all or any part of the addition to tax provided by this section on a showing by the taxpayer that there was reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith.↩