CLAUDE CLAYTON VARNEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Varney v. Commissioner
Docket No. 4154-89
United States Tax Court
T.C. Memo 1991-14; 1991 Tax Ct. Memo LEXIS 14; 61 T.C.M. (CCH) 1678; T.C.M. (RIA) 91014; January 17, 1991, Filed *14 Decision will be entered under Rule 155. Alan P. Woodruff, for the petitioner. Randall B. Pooler, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioner's 1985 Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6661 [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1985
9,678.00
2,419.50
483.90
*
Respondent determined petitioner omitted the following items from income for 1985 tax year: Interest
46.00
Taxable pension
2,331.00
IRA distribution
36,517.00
Taxable social security
3,771.50
After concessions by the parties, the issues for decision are: (1) Whether petitioner *15 is entitled to section 6013(e) innocent spouse relief with respect to taxes on the $ 36,517 distribution from his wife's IRA; (2) whether petitioner is liable for additions to tax pursuant to section 6653(a)(1) and (2); and (3) whether petitioner is liable for the addition to tax pursuant to section 6661(a). Petitioner resided in St. Petersburg, Florida, when he filed the petition in this case. FINDINGS OF FACT Before she married petitioner, Katherine E. Varney, petitioner's deceased wife, established an Individual Retirement Account (IRA) upon retiring from Winn-Dixie in 1981 after completing twenty eight years of service. The IRA contained $ 25,935.63 at its inception. In 1982 the Varneys, in their autumn years, married. This was the second marriage for each. They agreed to maintain their finances separately with the exception of household expenses, which they shared. The arrangement resulted in all of the couple's current income flowing into a joint household account. Mrs. Varney referred to the money she had accumulated before and separately maintained during the marriage as her "savings." Her "savings" were in reality the IRA. Petitioner knew Mrs. Varney's assets included *16 an insurance annuity, Pinellas Park municipal bonds, stocks, and a separate bank account. Petitioner believed his wife had spread her savings throughout these various investment vehicles. Petitioner's own premarital assets included two small IRAs to which he contributed and claimed tax deductions during their marriage. During January 1985 Mrs. Varney learned she was terminally ill with cancer. She transferred her savings, the assets in her IRA totalling $ 36,517, into a joint account. Petitioner became aware of the transfer shortly after it occurred, and expressed surprise at the large amount of his wife's savings. When he asked Mrs. Varney how she accumulated such a large amount of money, she explained that she saved a small amount each year over a long period of time. This satisfied petitioner, especially because he believed his wife possessed a certain talent for saving money. Additionally, the couple enjoyed honest and open communications. The Internal Revenue Service mailed a Form 1099R notice of taxable distribution from Mrs. Varney's IRA to her prior address in Utah. Petitioner never received the Form 1099R, and filed the couple's 1985 return on February 2, 1986. *17 Throughout their marriage, petitioner prepared the couple's tax returns, yet never explored the tax consequences flowing from what he believed to be his wife's savings. He incorrectly believed the first few hundred dollars of dividend and interest income need not be reported when taxpayers file a joint return. During their marriage, the Varneys lived on approximately $ 24,000 a year. After Mrs. Varney died, petitioner's income fell. He attempted to create a small business but never actually got started. He received approximately $ 1,000 a month from social security and military retirement, and led a more limited lifestyle than when his wife was alive. Petitioner lived in the same house, drove the same car, and dropped out of the Shriners because of high dues. His only major purchases were a stove and a refrigerator. Petitioner slowly spent the remainder of his wife's IRA, roughly $ 30,000, during the years following her death. OPINION When a husband and wife file a joint return, each is jointly and severally liable for the amount of tax due. Sec. 6013(d)(3). However, section 6013(e) relieves a spouse of joint liability if he or she proves that: (1) a joint return was made *18 for the taxable year; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) he or she did not know, and had no reason to know, of the substantial understatement when he or she signed the return; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. Sec. 6013(e)(1); Flynn v. Commissioner, 93 T.C. 355, 359 (1989). The spouse claiming entitlement to innocent spouse relief has the burden of proving that each statutory requirement of section 6013(e) is satisfied; a failure to prove any one of the statutory elements will prevent such spouse from qualifying for relief. Bokum v. Commissioner, 94 T.C. 126, 138 (1990); Rule 142(a). The Varneys filed a joint return for tax year 1985 containing a substantial understatement of tax attributable to the omission of $ 36,517 flowing from the distribution of Mrs. Varney's IRA. Any omitted item of gross income attributable to a spouse constitutes a grossly erroneous item. Sec. 6013(e)(2)(A). Thus, petitioner satisfies the *19 first two requirements of section 6013(e)(1). To satisfy the third requirement, a taxpayer must establish that in signing a joint return, he did not know or have reason to know of a substantial understatement of tax. Sec. 6013(e)(1)(C). The standard applied in determining whether a spouse knew or should have known of a substantial understatement is whether a reasonable person under the taxpayer's circumstances at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted. Bokum v. Commissioner, supra;Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. a Memorandum Opinion of this Court; Purcell v. Commissioner, 86 T.C. 228, 238 (1986), affd. 826 F.2d 470 (6th Cir. 1987), cert. denied 485 U.S. 987, 99 L. Ed. 2d 500, 108 S. Ct. 1290 (1988). A taxpayer claiming innocent spouse status must establish that he is unaware of the circumstances that give rise to error on the tax return and not merely unaware of the tax consequences. Bokum v. Commissioner, 94 T.C. at 145-146; Purcell v. Commissioner, 86 T.C. at 237-238 and 826 F.2d at 473-474; McCoy v. Commissioner, 57 T.C. 732 (1972). In Purcell *20 , we found the taxpayer wife failed to qualify for section 6013(e) innocent spouse relief. The taxpayers in Purcell reported income from the sale of stock as long-term capital gain when part of the income should have been reported as ordinary income from a covenant not to compete located in the contract for the sale of stock. Taxpayer wife knew of the covenant. However, she failed to understand the tax consequences flowing from the covenant. We found taxpayer wife's knowledge of the covenant disqualified her from innocent spouse relief. Likewise in Bokum, taxpayers misunderstood the effect of the tax laws on the sale of a ranch by taxpayer husband's wholly owned subsidiary and the subsequent distribution of the sale proceeds to him. We held taxpayer wife failed to qualify for innocent spouse relief, because she knew of the sale and the distribution. Respondent argues Mrs. Varney's savings constitute the underlying circumstances giving rise to error on the tax return. If the existence of Mrs. Varney's savings is the appropriate set of underlying circumstances, petitioner must be denied innocent spouse relief. But this is not the case. The deficiency in this case is *21 attributable to the fact that the "savings" was in the form of an IRA, the distribution of which was taxable. Thus the existence of Mrs. Varney's IRA constitutes the underlying circumstance petitioner must have known or had reason to know in order to be denied innocent spouse relief. Petitioner did not possess actual knowledge of his wife's IRA. Accordingly, this case differs from Bokum and Purcell in which the spouse claiming innocent spouse relief actually knew of the underlying circumstances giving rise to error on the tax return. Now we must consider whether petitioner had reason to know of his wife's IRA. Three factors have repeatedly appeared and been held significant in determining whether a spouse had reason to know of an understatement of tax: (1) participation in business affairs or bookkeeping by the alleged innocent spouse ( Quinn v. Commissioner, 62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975)); (2) the guilty spouse's refusal to be forthright concerning the couple's income ( Adams v. Commissioner, 60 T.C. 300 (1973)); and (3) the presence of unusual or lavish expenditures ( Mysse v. Commissioner, 57 T.C. 680, 699 (1972)). The courts *22 also focus on whether the couple's standard of living improved significantly during the years at issue. Mysse v. Commissioner, 57 T.C. at 698-699; Flynn v. Commissioner, 93 T.C. 355, 366 (1989). The reason to know standard imposes a duty of inquiry on the spouse claiming relief. Stevens v. Commissioner, 872 F.2d at 1505. The spouse claiming relief cannot turn a blind eye to facts that might give reason to know of unreported income. Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). Petitioner refrained from participating in Mrs. Varney's business affairs or bookkeeping in accordance with their agreement to separately maintain their premarital assets. Moreover, petitioner satisfied his duty to inquire. After realizing the magnitude of Mrs. Varney's savings, petitioner asked her how she accumulated such a large amount of money. Mrs. Varney provided petitioner with a forthright explanation which he accepted. We find Mr. Varney's acceptance of his wife's explanation reasonable under the circumstances. Mrs. Varney was sixty five years old when the couple married, and she had worked at Winn-Dixie for twenty eight years before retiring in 1981. The Varneys lived *23 a modest lifestyle on approximately $ 24,000 per year at the time Mrs. Varney transferred the $ 36,517 into the couple's joint account. Mrs. Varney suffered from terminal cancer, and until her death the couple incurred roughly $ 5,000 in medical expenses. These expenses do not constitute the type of unusual or lavish expenditures that would provide petitioner with reason to know of an omission from taxable income. The couple's standard of living did not improve significantly during the 1985 tax year. We find petitioner possessed no reason to know of his wife's IRA. The final requirement for innocent spouse relief is that, given all the facts and circumstances, it would be inequitable to hold the spouse seeking relief liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1)(D). Whether it is inequitable to hold a spouse liable is determined on the basis of all the facts and circumstances. Sec. 6013(e)(1)(D); sec. 1.6013-5(b), Income Tax Regs. One factor to be considered is whether the spouse claiming relief significantly benefited from the erroneous items. Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989). Normal support is not *24 a "significant benefit" for purposes of determining whether denial of innocent spouse relief would be inequitable under section 6013(e)(1)(D). Sec. 1.6013-5(b), Income Tax Regs.; Flynn v. Commissioner, 93 T.C. at 367; Estate of Krock v. Commissioner, 93 T.C. at 678. Petitioner has not met his burden of proving that after consideration of all the facts and circumstances it would be inequitable to hold him liable for the deficiency. The entire distribution flowed into the couples joint account and petitioner spent approximately $ 30,000 of the distribution, the amount remaining after payment of Mrs. Varney's medical expenses. Furthermore, the amount Mr. Varney spent is more than double his $ 12,000 annual fixed income in the years following Mrs. Varney's death. Petitioner significantly benefitted from the IRA distribution. Based on the record as a whole we believe it would not be inequitable to hold petitioner liable for the tax attributable to it. Therefore he is not an "innocent spouse" with regard to the omission of this income. Section 6653(a) - Negligence
Section 6653(a) imposes additions to tax if any part of an underpayment of tax is due to negligence or *25 disregard of rules and regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner has the burden of proof. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioner has met this burden of proof. Mrs. Varney died in September of 1985, months before the preparation of the 1985 tax return. Accordingly, she was not negligent in the preparation of the 1985 return. Mr. Varney reasonably believed Mrs. Varney's IRA was her savings, and that the savings passed to him as a gift or inheritance. Accordingly, petitioner is not liable for the section 6653(a)(1) or (2) additions to tax. Section 6661 - Substantial Understatement of Tax
Section 6661(c) permits respondent to waive all or any part of the section 6661 addition to tax on a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Respondent did not waive the 6661 addition to tax. Under the circumstances we find respondent abused his discretion. Accordingly, petitioner is relieved from *26 the section 6661 addition to tax. To reflect the foregoing, and previous concessions, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest payable under sec. 6601 with respect to the portion of the underpayment attributable to negligence.↩