ABRAHAM S. AND RUTH HANANEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hananel v. Commissioner
Docket No. 16969-89
United States Tax Court
T.C. Memo 1991-386; 1991 Tax Ct. Memo LEXIS 451; 62 T.C.M. (CCH) 439; T.C.M. (RIA) 91386; August 12, 1991, Filed *451 Decision will be entered under Rule 155. Sharon Cormack Mize and Max Nathan, Jr., for the petitioners. Emile L. Hebert, III and Linda J. Bourquin, for the respondent. USHIELDS, Judge. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION In a deficiency notice dated April 14, 1989, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to tax under sections
Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
6661
12/31/82
$ 15,967.25
$ 966.31
50% of the int.
$ 2,076.46
on $ 8,305.85  12/31/83
12,774.11
690.46
50% of the int.
--   on $ 2,293.61  The issues for decision are: (1) Whether petitioners are entitled under section 162(a)(2) to deductions for employee business expenses *452 claimed for 1982 and 1983; (2) whether petitioners are entitled under section 165(c)(3) to a casualty loss deduction claimed for 1982; (3) whether petitioners are liable under sections 6653(a)(1) and (2) for additions to tax for negligence for 1982 and 1983; and (4) whether petitioners are liable under section 6661 for additions to tax for substantially understating their income tax liability for 1982. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. At the time they filed their petition in this case petitioners were residents of Louisiana. They timely filed joint income tax returns for 1982 and 1983 with the Internal Revenue Service Center, Austin, Texas. The returns were prepared by Mr. Hananel. References hereinafter to petitioner in the singular are to Mr. Hananel. He was born in Sofia, Bulgaria, and lived there until he was 15 years old, when his family emigrated to Israel. While in Israel, he attended high school and the Israel Institute of Technology from which in 1957 he received a bachelor of science degree in mechanical engineering. In 1967, *453 he moved to the United States where he was employed by Lockheed-Georgia as a senior structures engineer until 1973. While working at Lockheed, he obtained from Georgia Institute of Technology a master of science degree and a doctorate degree in structural mechanics. In February of 1974, Mr. Hananel accepted employment in New Orleans as a computer stress group leader with Bell Aerospace Co., a division of Textron. His responsibility at Bell Aerospace was to determine with computers whether certain structures under construction were able to support specified weight loads. On March 26, 1974, he and his wife purchased a house in New Orleans which they still owned at the date of trial. Mr. Hananel's employment in New Orleans ended in June of 1977 when Bell Aerospace failed to obtain certain contracts with the Navy. At that time he accepted employment as an engineering consultant with Sperry Support Services, a division of Sperry Rand Corp. This job was located in Bay St. Louis, Mississippi, and he commuted 75 minutes by car from New Orleans until June of 1978, when his employment with Sperry Rand ended. With the termination of his employment as an engineer by Sperry Rand in June *454 of 1978, the manner in which Mr. Hananel's technical services were thereafter provided to construction and engineering firms changed. Prior to that time he was employed by, and rendered engineering services directly to, the firm in charge of a project. However, after that date he was employed as an engineer by employment agencies which in turn contracted to provide his services to the firm in charge of the project. For instance, from June of 1978 until January of 1981, Mr. Hananel was employed as an engineer by an employment agency known as IES which contracted to provide his services to Boeing Wichita Co. And again from January of 1984 until January of 1985 he was employed by Butler Service Group, an employment agency, which contracted to provide his services to Grumman Aircraft Co., Long Island, New York. During the period which includes both the taxable years under consideration, Mr. Hananel was employed as a stress analysis engineer by Salem Technical Services (Salem). Salem is a temporary manpower agency which specializes in supplying skilled technical personnel at a daily or hourly rate to engineering and other firms engaged in the construction business. Such skilled *455 personnel are usually needed by the engineering or other firm to aid their in-house staff during a peak work period. When the peak period ends and the skilled technician is no longer needed, the arrangement can be terminated by Salem's client at any time. Under such an arrangement, Salem in January of 1981, contracted to provide Mr. Hananel's services to Sargent & Lundy, Zion, Illinois, an engineering firm which designs conventional and nuclear power plants. Pursuant to the arrangement, Mr. Hananel worked on the design of a nuclear power plant being constructed near Chicago. Specifically, he conducted stress analysis on the proposed piping system for the plant to insure that the system could withstand the levels of stress required by the Nuclear Regulatory Commission (NRC). He also prepared reports with respect to the results of the tests for submission to NRC. When he accepted the assignment with Sargent & Lundy, Mr. Hananel was told that the job was already 95 percent complete but that it was still necessary to prepare and submit many reports to NRC. At that time he had no way of knowing how long the job would last. He also did not know how long his assignment to Sargent *456 & Lundy would last. During the period he was there, Sargent & Lundy had from 12 to 20 engineers on contract and individual engineers were frequently released with little notice. Mr. Hananel went to work at Sargent & Lundy on January 19, 1981. On Monday, January 9, 1984, he was told by Sargent & Lundy that Friday, January 13, 1984, would be his last day. During this period he was paid by Salem on an hourly basis plus a per diem. During all of 1982 and 1983, Mr. Hananel rented an apartment in Chicago and incurred living expenses such as for rent, food, laundry, and travel, as well as the cost of attending professional seminars and the purchase of publications related to his profession. Respondent has stipulated that the correct amounts of the deductions for such expenses for 1982 and 1983 are $ 24,104 and $ 26,532, respectively, provided they were incurred by Mr. Hananel while away from home in pursuit of his trade or business. As stated hereinbefore, petitioners have owned a home since 1974 in New Orleans where Mrs. Hananel and petitioners' two children have resided for the most part while he was employed not only in New Orleans but elsewhere. During 1982 and 1983 Mrs. Hananel *457 was employed part-time in New Orleans as a real estate agent. During 1983 she also received gross income in the amount of $ 8,693.78 from a day school in New Orleans. Petitioners have two children: a daughter who was 18 and a son who was 12 in 1982. During most of 1982 and 1983 the principal residence of Mrs. Hananel and the children was the home in New Orleans even though the daughter was attending college during at least part of this period. However, during each summer the daughter visited with Mr. Hananel in Chicago for a few weeks. Mrs. Hananel and the son also stayed with him in Chicago from September of 1982 through May of 1983, while the son prepared for his bar mitzvah. During this period the son also attended high school in Chicago. During a part of 1982, petitioners had joint checking accounts with three banks in Chicago. During all of 1983 they had a joint checking account with one bank in Chicago. Mr. Hananel spent about the last 8 or 10 days of December of 1982 visiting friends in New York. Prior to leaving Chicago shortly before Christmas in 1982 he parked his car, a 1974 Plymouth Valiant, in an area adjacent to his apartment building. At the time he was aware *458 that the City of Chicago was involved in certain construction work on a nearby street and because of the construction was towing cars parked in the area used for parking by him and other tenants in the building. Upon his return to Chicago on or about January 2, 1983, he discovered that his car was missing and called the Chicago Police Department. An individual at the police department prepared and filed a stolen car report. However, the same individual also advised Mr. Hananel that his car may not have been stolen but instead may have been towed by the city because of the construction being done to the nearby street. In an attempt to locate the car, Mr. Hananel telephoned several city pounds but was told that they did not have it. In early February of 1983, Mr. Hananel was informed by one of the pounds that his car had been towed but was subsequently crushed because its ownership could not be determined. On their 1982 tax return which was prepared and signed by Mr. Hananel on April 13, 1983, petitioners reported the car as stolen and claimed a casualty or theft loss in the amount of $ 3,100. The parties have stipulated that if a casualty or theft loss was sustained by Mr. Hananel *459 the value of the car was $ 1,300 and the loss occurred in 1983. OPINION (1) Employee Business Expenses. Personal living expenses are ordinarily nondeductible. Sec. 262. However, section 162(a)(2) allows "a deduction [for] all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business." To qualify under section 162(a)(2), the claimed expenses must be (1) reasonable and necessary; (2) incurred while away from home; and (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470, 90 L. Ed. 203, 66 S. Ct. 250 (1946). The purpose of section 162(a)(2) is to mitigate the burden upon a taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional living expenses. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). Generally, a taxpayer's home for purposes of section 162(a)(2) is the area or vicinity of his principal place *460 of employment and not where his residence is located. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Kroll v. Commissioner, supra at 561-562 (1968). However, an exception to this general rule exists where a taxpayer with a well-established home accepts temporary, as opposed to indefinite, employment elsewhere. Peurifoy v. Commissioner, 358 U.S. 59, 60, 3 L. Ed. 2d 30, 79 S. Ct. 104 (1958). In such a situation, the taxpayer's personal residence is his tax home, and he is entitled to deduct travel expenses paid or incurred while away from such home because it would not be reasonable for him to move his home simply to be near temporary employment. Tucker v. Commissioner, 55 T.C. 783, 786 (1971). However, if employment is indefinite, rather than temporary, the expenses are not deductible. In that situation the law considers that a reasonable taxpayer would move his home to the place of employment. Consequently, the travel from his former home is not required by his business but is incurred by his personal choice. Commissioner v. Flowers, supra.In other words, if for personal reasons, a taxpayer *461 chooses not to live at a place of indefinite employment, the resulting travel costs are nondeductible personal expenses. For travel expenses to be deductible, "The job, not the taxpayer's pattern of living, must require the travel." Carragan v. Commissioner, 197 F.2d 246, 249 (2d Cir. 1952). If a job which begins as temporary employment becomes permanent or of indefinite duration, the situs of such employment becomes the taxpayer's home for tax purposes, and the travel expenses incurred there become nondeductible personal expenses. Norwood v. Commissioner, 66 T.C. 467, 470 (1976). The determination of whether employment is temporary or indefinite is a question of fact. Peurifoy v. Commissioner, supra at 60. No single element is determinative of the ultimate factual issue of whether employment is temporary or indefinite. Norwood v. Commissioner, supra at 470. There are no rules of thumb, durational or otherwise, to distinguish temporary from indefinite employment. Norwood v. Commissioner, supra at 470. However, several criteria are considered important in determining *462 whether employment is indefinite or temporary. McCallister v. Commissioner, 70 T.C. 505 (1978). These criteria are: (1) The expected duration of the employment, (2) the size of the project, (3) the available supply of labor, and (4) the actual duration of employment. McCallister v. Commissioner, supra.The fact that no assurances are given as to how long a job will last is not determinative as to the temporariness of the employment. McCallister v. Commissioner, supra at 510. Even if it is known that a particular job may or will terminate at some future date, that job is not temporary if the expected duration is a substantial or indefinite period of time. Jones v. Commissioner, 54 T.C. 734, 740 (1970), affd. 444 F.2d 508 (5th Cir. 1971). Employment is considered to be indefinite rather than temporary, unless termination within a reasonably short period of time can be foreseen. Albert v. Commissioner, 13 T.C. 129, 131 (1949); Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. per curiam 438 F.2d 1216 (6th Cir. 1971). *463 Employment that has a reasonable likelihood of continuing for an indeterminable or for a substantial period of time is generally regarded as indefinite. Kasun v. United States, 671 F.2d 1059, 1061 (7th Cir. 1982). Certainty of continued employment is not the test. The fact that an employee could be laid off at any time merely shows that his employment is not permanent, but impermanence by itself does not make employment temporary. Garlock v. Commissioner, 34 T.C. 611, 616 (1960). Employment which lacks permanence is indefinite unless termination is foreseeable within a short period of time. Kasun v. United States, supra.A taxpayer who accepts indefinite employment away from his home thereby shifts his home for tax purposes to the location of the new employment. If he chooses to maintain his prior residence, the choice is personal and the expenses of traveling to and living at the place of employment are not deductible under section 162(a)(2). Coombs v. Commissioner, 608 F.2d 1269, 1276 (9th Cir. 1979). Furthermore, the filing of a joint return by a taxpayer with a spouse who resides at *464 a different location has no bearing on the taxpayer's home for tax purposes because spouses may have different tax homes. See Chwalow v. Commissioner, 470 F.2d 475, 478 (3rd Cir. 1972). From the record as a whole we are convinced that Mr. Hananel's employment with Sargent & Lundy during the years in issue was indefinite rather than temporary for the reasons hereinafter set out. First, the employment continued from January of 1981 to January of 1984, a period of 3 years, which on its face does not appear to be a temporary period. Secondly, even though he was told at the outset that the job was 95 percent complete he was also told that a number of reports still had to be prepared and submitted to NRC. He testified that from all of this he could not determine at the beginning how long his stay with Sargent & Lundy would continue. Under such circumstances the period of employment is usually found to be indefinite as opposed to temporary. See Kasun v. United States, supra.
Finally, the fact that his employment could have been terminated at any time under the arrangement between Salem and Sargent does not establish that his employment was *465 temporary. Such fact establishes that the employment was not permanent, but it alone does not establish that the employment was temporary. Garlock v. Commissioner, supra.To be temporary as opposed to indefinite the termination of an employment must be foreseeable within a fixed or relatively short period of time. Albert v. Commissioner, supra; Stricker v. Commissioner, supra.Such is not the case here; and when viewed as a whole, the record before us clearly establishes that Mr. Hananel's employment at Sargent & Lundy was indefinite and not temporary. Consequently, the claimed business expenses are not deductible under section 162(a)(2). (2) Casualty Loss. Under section 165(c)(3) a deduction is allowed for the loss of property even though the property is not connected with a trade or business or a transaction entered into for profit, if such loss arises from fire, storm, shipwreck, or other casualty, or from theft. Petitioners claim that the destruction of Mr. Hananel's automobile by the City of Chicago constituted an "other casualty" within the meaning of section 165(c)(3) because such destruction *466 was the result of an identifiable event of a sudden, unexpected, and unusual nature. Matheson v. Commissioner, 54 F.2d 537 (2d Cir. 1931); Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941). Respondent first contends that petitioners have not carried their burden under Rule 142(a) of proving that their automobile was towed and crushed by the City of Chicago. Secondly, respondent contends that even if we conclude that the automobile was destroyed in this manner such destruction could not be the result of an unexpected event which Mr. Hananel was powerless to prevent since he was aware that the city was towing cars from the area in which he left it. We found Mr. Hananel to be a credible witness, and from his testimony and the record as a whole we are satisfied that his automobile was towed and crushed by the City of Chicago. We are also satisfied that under the circumstances related by him the towing of his vehicle by the city could not have been an unexpected event which he was powerless to prevent because such towings obviously occur every day in large cities like Chicago. Therefore, we agree with respondent that the towing of the vehicle under *467 such circumstances was foreseeable and could have been avoided by Mr. Hananel through the exercise of due care in the selection of a parking space. It is well settled, however, that a taxpayer's simple negligence, as opposed to wilful and wanton negligence, does not prohibit the allowance of a casualty loss deduction. Heyn v. Commissioner, 46 T.C. 302, 308 (1966); White v. Commissioner, 48 T.C. 430, 435 (1967). However, even though the towing of his car should have been foreseen by Mr. Hananel as the likely result of his negligence, we are unable to conclude that he could have reasonably foreseen that his negligent conduct would result in its total destruction by the city. Instead, experience would have indicated that the usual result of such negligent behavior would have been limited to a towing charge. We conclude, therefore, that the casualty loss deduction in the stipulated amount is allowable because the destruction of the car occurred from an unusual, sudden, and unexpected event which was unforeseeable by Mr. Hananel. (3) Additions To Tax For Negligence. Section 6653(a)(1) provides that if any part of an underpayment of income *468 tax is due to negligence or the intentional disregard of rules or regulations, an amount equal to 5 percent of the underpayment shall be added to the tax. Section 6653(a)(2) provides for an addition to the tax in the amount of 50 percent of the interest due on any part of an underpayment of income tax which is due to negligence or the intentional disregard of rules or regulations. Negligence under section 6653(a)(1) and (2) is the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under similar circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners have the burden of proving that the underpayment of tax which results from the disallowance of the away from home expenses was not due to negligence or the intentional disregard of rules or regulations. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). To sustain their burden, petitioners must show that due care was used in preparing the returns and that they acted reasonably and prudently under the circumstances. See Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and *469 remanding in part 43 T.C. 168 (1964). We found Mr. Hananel to be highly intelligent and obviously well educated in his field of engineering. However, from our observation of him at trial, we are convinced that his innate intelligence, as well as his education and experience in his highly specialized field, was not sufficient to permit him to discern the difference between temporary as opposed to indefinite employment as reflected in the numerous opinions on the subject. Therefore, we find that he was acting in good faith when he concluded that the items in question were deductible as away from home expenses. See Kasey v. Commissioner, 54 T.C. 1642 (1970) affd. per curiam 457 F.2d 369 (9th Cir. 1972). Accordingly, we decline to sustain the imposition of the additions to tax under section 6653(a)(1) and (2). (4) Addition To Tax For The Understatement of Income Tax. Section 6661 provides for an addition to tax if there has been a substantial understatement of income tax liability by the taxpayer. An understatement is the difference between the amount of tax required to be shown on a taxpayer's return and the amount actually *470 appearing on the return less any rebates. The understatement is substantial if it exceeds the greater of 10 percent of the amount required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). A taxpayer may reduce the amount of an understatement by showing that he had substantial authority for the position taken on the return or by adequately disclosing in or with the return all relevant facts affecting the tax treatment of the items giving rise to the understatement. Secs. 6661(b)(2)(B)(i) and (ii); and 6661(b)(2)(C). Petitioners claim that the additions to tax should have been waived by respondent pursuant to section 6661(c) which provides for such a waiver if the taxpayer shows that he acted in good faith and there was reasonable cause for all or part of the understatement. Denial of a waiver by respondent is subject to judicial review. The standard on review is whether respondent abused his discretion in refusing the waiver, not whether the Court would have decided the issue differently. Mailman v. Commissioner, 91 T.C. 1079 (1988). An important factor in determining reasonable cause and good faith is the extent of the taxpayer's efforts to properly *471 report his tax liability. Sec. 1.6661-6(b), Income Tax Regs. We have already found that under the circumstances involved in this case, Mr. Hananel acted in good faith in determining that the questionable items were deductible. We conclude, therefore, that respondent abused his discretion in refusing to waive the addition to tax under section 6661. [2] Accordingly, petitioners are not liable for such addition. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See Lyons v. Commissioner, T.C. Memo 1991-84; Varney v. Commissioner, T.C. Memo 1991-14↩.