T.C. Memo. 2001-69


UNITED STATES TAX COURT


DAVID R. BRADEN AND SHARON F. BRADEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9459-98.                          Filed March 22, 2001.


Sharon F. Braden, pro se.

<u>Thomas E. Crowe</u>, for petitioner David R. Braden.

<u>Fred E. Green, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income tax of $16,525 and an accuracy-

related penalty under section 6662(a)[1] of $2,072 for the taxable year 1995.

After concessions,[2] the only issue for decision[3] is whether David R. Braden is entitled to relief from liability under section 6015(b)(1) for the income tax deficiency determined by respondent with respect to petitioners' jointly filed Federal income tax return for 1995. References to petitioner refer to David R. Braden, and references to Ms. Braden refer to Sharon F. Braden.[4]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner Sharon F. Braden and respondent filed a stipulation of settled issues in which Ms. Braden conceded she is liable for a deficiency in income tax for taxable year 1995 in the amount of $16,525, and respondent conceded that Ms. Braden is not liable for the accuracy-related penalty under sec. 6662(a) for 1995. Respondent also conceded the sec. 6662(a) penalty with respect to petitioner David R. Braden.

[3]The only other issues raised in the notice of deficiency are computational.

[4]Following petitioners' divorce, Ms. Braden changed her name to Sharon Mueller. Since Ms. Braden has not moved to change the caption in this case to reflect her new surname, however, we refer to her in this opinion as Ms. Braden.

reference.  At the time the petition was filed, petitioner resided in Las Vegas, Nevada.

Petitioners were married in October 1981.  During 1995, they resided with their minor child, two other children,[5] and a grandchild in Las Vegas, Nevada.  Petitioners filed a joint Federal income tax return for 1995.

Petitioner attended college for 3 years, majoring in animal science.  While in college, petitioner did not take any courses in the fields of finance or business.  Petitioner became a police officer and, in approximately 1984, took a position with the Las Vegas Police Department, where he was employed throughout 1995.

Ms. Braden graduated from high school and attended one semester of college.  During 1995, she maintained petitioners' household and took care of the children.  During the course of petitioners' marriage, Ms. Braden was responsible for paying petitioners' bills from funds supplied by petitioner and managing their financial affairs.  Petitioner deposited his payroll checks directly into a joint checking account maintained by petitioners at Network Federal Credit Union; Ms. Braden used this account to pay petitioners' bills.

---

[5]The relationship of these children to petitioners does not appear in the record.

Petitioner did not review petitioners' bills or bank statements and only rarely discussed finances with Ms. Braden or paid a bill himself.

In approximately August 1995, petitioners moved into a newly constructed house. Ms. Braden's father, who had been diagnosed with terminal cancer several months earlier, moved into petitioners' new home with them and remained with them until his death in September 1995.

Ms. Braden and her brother were the heirs of their deceased father; Ms. Braden was appointed executrix of her father's estate. As executrix, Ms. Braden met with the estate's probate counsel regarding estate matters. Petitioner sometimes attended these meetings but did not assist Ms. Braden in performing her duties as executrix.

At some point during 1995, Ms. Braden received distributions from several individual retirement accounts (IRA's) owned by her father at the time of his death. Although petitioner was aware that Ms. Braden had received the distributions, he did not know that the distributions came from IRA's or that the distributions were taxable for Federal income tax purposes. He believed that the distributions simply represented nontaxable distributions from the estate of Ms. Braden's father. His belief was based on conversations he had with Ms. Braden, the estate's probate counsel, and a retired Internal Revenue Service (IRS) special

agent. At a meeting held shortly after Ms. Braden's father died, the estate's probate counsel told petitioners there would be no tax on the distributions because inheritances under $650,000 were exempt from tax. The retired IRS special agent, whom petitioner had met at a class on financial crimes investigations, also told petitioner, in response to petitioner's question regarding the taxability of an inheritance, that inheritances under $650,000 were exempt from tax.

Ms. Braden also received interest earned on certain accounts owned by her father at his death, but the interest income was not reported on petitioners' 1995 return. Petitioner did not know that part of the distributions received by Ms. Braden consisted of interest income.[6] Petitioner believed that all of the funds distributed to Ms. Braden as a result of her father's death were simply an inheritance from Ms. Braden's father.[7]

Ms. Braden used approximately $10,000 of the distributions she received as a result of her father's death to pay her father's hospital bills and gave half of the remaining money to

---

[6]We infer from the record as a whole that the accounts generating the omitted interest belonged to Ms. Braden's father before his death and that the omitted interest was part of the distributions made to Ms. Braden as a result of his death.

[7]Although respondent claims that petitioner did not assert that he is entitled to relief from joint and several liability with respect to the omitted interest income, petitioner consistently took the position throughout the case that he believed the distributions Ms. Braden received as a result of her father's death were a part of her nontaxable inheritance.

her brother. Ms. Braden spent the balance of the distributions to construct a block wall at petitioners' home and to purchase furniture, furnishings, a big-screen television, a computer, a hot tub, and landscaping for petitioners' home, a cruise for herself and her sister-in-law, and stereos for the four children who were living with petitioners at the time. Ms. Braden also used some of the money to help purchase two cars--a Toyota Avalon for which she paid approximately $15,000 and a Toyota Tercel for which she paid approximately $11,000. Petitioner contributed to the purchase of the cars by trading in a 1995 Chevrolet pickup truck that he had purchased new; the trade-in value was credited against the purchase price of one or both of the cars.

In May 1996, petitioners separated. Petitioner moved out of the family home; Ms. Braden remained in the home. Petitioner continued to deposit his payroll checks into the joint account. Ms. Braden was supposed to pay the mortgage and utilities for the family home but did not do so for a period of approximately 4 months. The delinquency, which petitioner did not discover until the family home was about to be sold, was remedied with funds from petitioner and from the sale of the family home.

In July 1997, petitioners divorced. In connection with the divorce, petitioners sold their home. Petitioner retained no part of the sale proceeds. Ms. Braden retained the furniture and furnishings she purchased with the distributed funds, as well as

other property acquired during petitioners' marriage, with the exception of a big-screen television and VCR, a vacuum cleaner, a couch and matching chair, and a computer and desk that petitioner received as part of petitioners' divorce settlement.

Before petitioners separated, petitioner prepared petitioners' 1995 joint Federal income tax return. He did not report the distributions attributable to Ms. Braden's father as income on that return because he believed the funds to be nontaxable. Petitioner did not know the distributions consisted of IRA withdrawals and interest income, nor did he know the proper characterization of the distributions for Federal income tax purposes until he was contacted by respondent's agent.

In the notice of deficiency, respondent determined that Ms. Braden received distributions from the IRA's of her deceased father, the taxable portion of which totaled $61,681. After allowing a $5,000 death benefit exclusion, respondent determined that petitioners failed to report $56,681 of the IRA distributions as income on their 1995 joint return. Respondent also determined that petitioners failed to report interest income of $754 on their 1995 joint return.

OPINION

A.  Statutory Framework

Section 6013(a) authorizes spouses to elect to file a joint Federal income tax return. If they elect to do so, the tax

required to be shown on the return is computed on their combined income, expenses, and credits, and their liability for the tax is joint and several. See sec. 6013(d)(3).

In 1971, Congress enacted section 6013(e) to ameliorate perceived inequities resulting from the imposition of joint and several liability in certain circumstances. See S. Rept. 91-1537 (1970), 1971-1 C.B. 606. Section 6013(e), as originally enacted, offered relief from joint and several liability only in cases involving omitted income where the spouse seeking relief could prove that he or she met the strict requirements of subsection (e).

In 1984, section 6013(e) was amended to permit a spouse to seek relief from joint and several liability in cases where an understatement of tax resulted from erroneous deductions claimed on a joint tax return. See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424, 98 Stat. 494, 801; H. Conf. Rept. 98-861, at 1119 (1984), 1984-3 C.B. (Vol. 2) 1, 373. Section 6013(e)(1), as amended, provided that a spouse could be relieved of joint and several liability if the spouse proved that: (1) A joint return was filed; (2) the return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) under the circumstances it would be

inequitable to hold the spouse seeking relief liable for the substantial understatement.

Many taxpayers tried unsuccessfully to obtain relief under section 6013(e), even after it was amended in 1984. In order to make relief from joint and several liability more accessible, Congress, in 1998, repealed section 6013(e) and enacted section 6015. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 734; H. Conf. Rept. 105-599, at 249 (1998). Section 6015 provides several avenues of relief, one of which is section 6015(b)(1). See Cheshire v. Commissioner, 115 T.C. 183, 189 (2000). Although some of the provisions of section 6015 have no analog in former section 6013(e), section 6015(b)(1) is similar to former section 6013(e)(1). In analyzing section 6015(b)(1), we may look to cases interpreting former section 6013(e)(1) for guidance. See Cheshire v. Commissioner, supra; Butler v. Commissioner, 114 T.C. 276, 283 (2000).

Petitioner seeks relief under section 6015(b)(1) from joint and several liability for the deficiency determined by respondent with respect to the IRA and interest distributions (collectively, the distributions) received by Ms. Braden during 1995.[8]

---

[8]Petitioner originally sought relief under former sec. 6013(e). The parties subsequently stipulated that "the innocent spouse issue in this case is governed by" sec. 6015. Petitioner abandoned his argument under sec. 6015(c) at trial.

Section 6015(b)(1) provides:

> (1)  In general.--Under procedures prescribed by the Secretary, if--
>
>> (A) a joint return has been made for a taxable year;
>>
>> (B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;
>>
>> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;
>>
>> (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and
>>
>> (E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,
>
> then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

A taxpayer must satisfy each requirement under subparagraphs (A) through (E) to be entitled to relief under section 6015(b)(1).

There is no dispute that petitioner satisfies subparagraphs (A), (B), and (E).  Petitioner made a joint return with Ms. Braden, there is an understatement of tax attributable to erroneous items of Ms. Braden, and respondent does not dispute

that petitioner made a qualifying election as required by section 6015(b)(1)(E).  Respondent contends, however, that the requirements of subparagraphs (C) and (D) have not been met.

B.    The No Knowledge of the Understatement Requirement
      of Section 6015(b)(1)(C)

Petitioner's case is appealable to the Court of Appeals for the Ninth Circuit.  In omitted income cases under former section 6013(e)(1), the Court of Appeals for the Ninth Circuit and the Tax Court have applied similar standards to decide whether the no knowledge of the understatement requirement was met.  See Guth v. Commissioner, 897 F.2d 441, 444 (9th Cir. 1990), affg. T.C. Memo. 1987-522.  In cases applying former section 6013(e)(1), we have examined the facts and circumstances to ascertain whether a taxpayer seeking relief from joint and several liability either knew of the understatement or had reason to know of the understatement at the time he or she signed the subject return. See Bokum v. Commissioner, 94 T.C. 126, 152-154 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).  If a taxpayer asserted that he did not have reason to know of an understatement within the meaning of section 6013(e)(1)(C), we have examined the taxpayer's knowledge of the transaction giving rise to the omitted income. See id.  We make the same analysis under section 6015(b)(1)(C). See Cheshire v. Commissioner, supra at 192-193.

The gist of petitioner's argument is that he did not know or have reason to know that the distributions his wife received

consisted of IRA withdrawals and interest income.  Petitioner argues, in effect, that (1) he did not have actual knowledge of the understatement and (2) he did not have sufficient knowledge of the underlying transaction to give him reason to know of the understatement.

We are satisfied from our review of the record in this case that petitioner did not have actual knowledge of the understatement, or of the transactions that produced the omitted income giving rise to the understatement, when he prepared and filed petitioners' joint return for 1995.  In fact, respondent has not argued that petitioner knew of the understatement. Respondent argues only that, because petitioner knew that Ms. Braden had received the distributions as a result of her father's death, petitioner had knowledge of the transaction giving rise to the understatement and, therefore, he knew or had reason to know of the understatement within the meaning of section 6015(b)(1)(C).  We reject respondent's argument based on our review of the facts and applicable law.

A taxpayer has reason to know of an understatement if a reasonably prudent taxpayer in his position at the time he signed the return could be expected to know that the return contained the understatement.  See Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989), revg. an Oral Opinion of this Court; Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C.

Memo. 1988-63; Winnett v. Commissioner, 96 T.C. 802, 812 (1991);
Bokum v. Commissioner, supra at 138; Flynn v. Commissioner, 93
T.C. 355 (1989); Terzian v. Commissioner, 72 T.C. 1164 (1979).
Factors to consider in analyzing whether a taxpayer seeking
relief from joint and several liability had reason to know of the
understatement include: (1) The taxpayer's level of education;
(2) the taxpayer's involvement in the family's business and
financial affairs; (3) the presence of expenditures that appear
lavish or unusual when compared to the family's past levels of
income, standard of living, and spending patterns; and (4) the
culpable spouse's evasiveness and deceit concerning the couple's
finances. See Price v. Commissioner, supra at 965 (citing
Stevens v. Commissioner, supra at 1505); Varney v. Commissioner,
T.C. Memo. 1991-14. "The question we must ask is whether
petitioner's active and knowledgeable participation in the
subject transaction(s) rose to a level where he * * * had reason
to know of the * * * understatement." Pulliam v. Commissioner,
T.C. Memo. 1994-609.

Applying the factors used to determine whether a taxpayer
had reason to know of the understatement confirms that petitioner
did not have constructive knowledge of the underlying transaction
or of the understatement resulting from the transaction. There
is nothing in the record to support a conclusion that petitioner,
a high school graduate with 3 years of college education, had any

involvement with, or knowledge of, the financial affairs of Ms.
Braden's father prior to the father's death.  After the father's
death, petitioner knew only that Ms. Braden was entitled to
receive, and did receive, an inheritance.  Petitioner's
involvement with petitioners' joint financial affairs generally
was limited to depositing his paycheck in a joint account with
Ms. Braden.  Ms. Braden paid most of petitioners' bills and
managed their financial affairs.  Ms. Braden, the executrix of
her father's estate, also handled the financial matters flowing
from her father's death.  Although Ms. Braden certainly was in a
position to know that the distributions came from her father's
IRA's, the record does not contain any evidence that she or
anyone else told petitioner that the distributions consisted of
IRA withdrawals and interest income or gave him any reason to
conclude the distributions were taxable.[9]  There were no lavish
or unusual expenditures following the receipt of the
distributions that were inconsistent with petitioner's belief
that Ms. Braden had received a nontaxable inheritance from her
father's estate.  Moreover, although petitioner inquired about

---

[9]Respondent relies upon our decision in McCoy v.
Commissioner, 57 T.C. 732 (1972), for the proposition that where
both spouses are "innocent" neither spouse is entitled to relief
under former sec. 6013(e).  We reject respondent's argument based
on McCoy.  The evidence in this case supports a conclusion that
Ms. Braden, by reason of her position as executrix and
beneficiary of the IRA's, likely knew or had reason to know that
the accounts from which the distributions were made were IRA's.

the tax consequences of the distributions on at least two occasions, the information he received confirmed his belief that the distributions were part of Ms. Braden's nontaxable inheritance.

What constitutes sufficient knowledge of the transaction in this case can best be illustrated by comparing our decisions in Cheshire v. Commissioner, 115 T.C. 183 (2000) (applying section 6015), and Varney v. Commissioner, supra (applying section 6013(e)). Both cases involved distributions to the taxpayer's spouse from retirement accounts in which the taxpayer's spouse owned an interest.

In Cheshire, the taxpayer had been informed by her husband that he was contemplating retirement and was eligible to receive a substantial sum of money from his retirement plan. The taxpayer knew that her husband subsequently received the distribution from his retirement plan. In fact, the taxpayer's husband showed the taxpayer the deposit slip reflecting the deposit of the retirement plan distribution and discussed with her the purposes for which the distribution would be used. See Cheshire v. Commissioner, supra at 193. On these facts we concluded the taxpayer had actual knowledge of the underlying transaction that produced the omitted income and, therefore, the taxpayer knew or had reason to know of the understatement.

Consequently, she did not satisfy the no knowledge of the understatement requirement of section 6015(b)(1)(C).  See id.

In Varney v. Commissioner, supra, we reached the opposite conclusion under former section 6013(e)(1)(C).  The distributions in Varney were from an IRA belonging to the taxpayer's deceased spouse, which the spouse had opened prior to her marriage to the taxpayer.  After the taxpayer's spouse learned that she had terminal cancer, the spouse withdrew the funds in her IRA and deposited them into a joint account with the taxpayer.  When the taxpayer asked his spouse about the large deposit into their joint account, his spouse told him that the funds were part of the savings she had accumulated over the years.  The taxpayer knew only that the funds came from his spouse's savings; he did not know that the funds were distributed from his spouse's IRA.  In deciding whether the taxpayer met the section 6013(e)(1)(C) requirement, we examined whether the taxpayer was aware of the underlying transaction that produced the omitted income.  We concluded that, since the taxpayer had satisfied his duty of inquiry and did not know that the funds received were the result of a distribution from his spouse's IRA, the taxpayer did not have actual or constructive knowledge of the transaction generating the understatement.  We held that the taxpayer

satisfied the no knowledge of the understatement requirement of former section 6013(e)(1)(C) on these facts.[10]

As in Varney v. Commissioner, T.C. Memo. 1991-14, the essence of the transaction in this case is that the distributions came from IRA's. Knowledge of the distributions' composition is what enables a taxpayer to ascertain the proper tax treatment of the distributions. See secs. 61(4), 72, 408. Unaware that the distributions consisted of IRA withdrawals and interest income, petitioner concluded that the distributions represented an inheritance excludable from income for Federal income tax purposes. See sec. 102(a) ("Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."). Petitioner did not know the essential facts of the transaction that define its character for Federal income tax purposes. See Varney v. Commissioner, supra; see also Hillman v. Commissioner, T.C. Memo. 1993-151 (a taxpayer must have sufficient knowledge of transaction to permit him to inquire as to its appropriate tax treatment); cf. Cheshire v. Commissioner, supra. Since petitioner did not know that the distributions consisted of IRA withdrawals and interest income and, after satisfying his duty of inquiry, reasonably believed the

---

[10]In Varney v. Commissioner, T.C. Memo. 1991-14, we ultimately concluded that the taxpayer was not entitled to be relieved of joint and several liability for the deficiency because the taxpayer did not prove he satisfied former sec. 6013(e)(1)(D).

distributions were a nontaxable inheritance from Ms. Braden's father, we conclude that petitioner did not have sufficient knowledge of the transaction generating the understatement to give him knowledge or reason to know of the understatement.

We hold that petitioner has satisfied the no knowledge of the understatement requirement of section 6015(b)(1)(C).

C.    The Equitable Requirement of Section 6015(b)(1)(D)

We now turn to the final contested requirement, section 6015(b)(1)(D).  Respondent contends that, since a portion of the funds distributed to Ms. Braden was used to purchase furniture and furnishings for petitioners' family home and to pay for improvements to the home, petitioner benefited from the understatement.  Respondent argues, therefore, that it would not be inequitable to hold petitioner liable for the deficiency in tax attributable to the understatement.  We disagree.

We must evaluate all of the facts and circumstances in deciding whether it is inequitable to hold a taxpayer liable for the deficiency under the relief provisions of section 6015(b)(1).  See sec. 6015(b)(1)(D).  Since section 6015(b)(1)(D) is substantially identical to former section 6013(e)(1)(D), we may look to cases applying former section 6013(e)(1)(D) to inform our analysis under section 6015(b)(1)(D).  See Butler v. Commissioner, 114 T.C. 276 (2000).

Under former section 6013(e), whether the taxpayer significantly benefited from the omitted income was an important factor in reaching our conclusion. See Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989). Normal support was not considered to be a significant benefit. See sec. 1.6013-5(b), Income Tax Regs. In applying former section 6013(e)(1)(D), we described normal support as a "floating standard, inasmuch as 'one person's luxury can be another's necessity'". Klimenko v. Commissioner, T.C. Memo. 1993-340 (quoting Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975)). We examined evidence of the taxpayer's lifestyle, including his expenditures, and how the omitted income was used by the taxpayer and his spouse to decide whether a taxpayer significantly benefited from the understatement. See Estate of Krock v. Commissioner, supra.

In this case, our evaluation of the evidence regarding petitioner's lifestyle, expenditures, and other financial matters leads us to the conclusion that petitioner did not substantially benefit from the understatement. The family home was purchased with funds supplied by petitioner. Petitioner made a downpayment of approximately $13,000 toward the purchase price of the house (approximately $175,000) and supplied the funds to pay the mortgage during petitioners' marriage. When the family home was sold, petitioner retained none of the proceeds.

Ms. Braden did not contribute any part of the downpayment, nor did she supply the money to pay the monthly mortgage payments. After petitioners separated, Ms. Braden continued to live in the family home and was supposed to pay the mortgage and other household expenses. She did not do so. Arrearages owed to the mortgage, telephone, and gas and electric companies were paid out of proceeds from the sale of petitioners' home, and, to the extent that the sale proceeds were insufficient, petitioner paid the balance.

With part of the distributions, Ms. Braden purchased some furniture and furnishings for the family home and paid for some home improvements. In the divorce settlement, Ms. Braden kept all of petitioners' household furniture and furnishings, with the exception of a computer and desk, television, VCR, vacuum cleaner, and couch and matching chair. Both Ms. Braden and petitioner contributed to the purchase of two cars in 1995; Ms. Braden contributed cash, and petitioner contributed by trading in a 1995 pickup truck that he had purchased with his own funds.

Taking into account all the facts and circumstances, we are satisfied that petitioner did not benefit substantially from the understatement. Neither petitioner's use of the family home and its furniture and furnishings, nor his receipt of a few items of furniture and equipment as part of his divorce settlement amounted to a substantial benefit, particularly when his overall

financial contribution to petitioners' household is taken into account.  See <u>Klimenko v. Commissioner</u>, <u>supra</u>.

We conclude that it is inequitable to hold petitioner liable for that part of the deficiency attributable to the distributions received by Ms. Braden in 1995 and that, therefore, the requirement of section 6015(b)(1)(D) is satisfied.

<u>Conclusion</u>

After carefully reviewing the record in this case, we hold that petitioner has satisfied each of the requirements of section 6015(b)(1) and that he is entitled to be relieved of liability for tax attributable to the distributions received by Ms. Braden in 1995.

To reflect the foregoing and the stipulation of settled issues,

<u>Decision will be entered</u>

<u>under Rule 155</u>.